BEFORE: THE HONORABLE TIMOTHY M. REIF, JUDGE
UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| Vanguard Trading Company LLC, <br><br> Plaintiff, <br><br> v. <br><br> United States. <br><br> Defendant. | Ct. No. 23-00253 |

**MEMORANDUM OF LAW IN SUPPORT OF THE
RULE 56.2 MOTION OF PLAINTIFF
VANGUARD TRADING COMPANY LLC FOR JUDGMENT
UPON THE AGENCY RECORD**

David J. Craven, Esq.
CRAVEN TRADE LAW LLC
3744 N Ashland Avenue
Chicago, Illinois 60613
Tel. 773-709-8506
David.craven@tradelaw.com
Counsel for Plaintiffs

Dated: June 20, 2024

Table of Contents

Table of Contents ...................................................................................................... i

Table of Authorities ................................................................................................ ii

I.    Introduction ..................................................................................................... 1

II.    Statement Pursuant to Rule 56.2(C) ...........................................................2

    A.    Administrative Determination Under Review ......................................2

    B.    Issues of Law ......................................................................................... 3

    C.    Summary Of Arguments ........................................................................4

    D.    Statement Of Facts ................................................................................5

III.    Standard Of Review ......................................................................................6

IV.    Argument .......................................................................................................8

    A.    The EAPA Statute Was Intended to Address Evasion, Not to Address Legitimate Entries with Factual Disputes .........................8

    B.    CBP Should Have Sought Advice from Commerce ............................9

    C.    The Lab Tests Placed on the Record do not Support a Finding of Evasion ................................................................................13

        1.    The Lab Tests Supplied by CBP Are Incomplete and the Other Lab Test Controls ................................................13

        2.    The Lab Reports Contradict the Notice of Determination as to Evasion ......................................................17

    D.    Commerce Would Have Found That the Product Was Out of Scope ..............................................................................................19

V.    Conclusion ...................................................................................................20

Table of Authorities

**Judicial:**

*Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281 (1974) .................................................................................7

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156 (1962) ........................6

*Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402 (1971) .........................7

*Grobest & I-Mei Industrial (Vietnam) Co. v. United States*, 36 CIT __, __, 815 F. Supp. 2d 1342 (2012) ................................................7

*Motor Vehicle Mfrs. Ass'n. v. State Farms Ins.*, 463 U.S. 29 (1983) .......................7

*NTN Bearing Corp. v. United States*, 74 F.3d 1204 (Fed. Cir. 1995) .......................8

*Royal Brush Manufacturing, Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023) ................................................................13

*Star Fruits S.N.C. v. United States*, 393 F.3d 1277 (Fed. Cir. 2005) .....................7

*United States v. Optrex America, Inc.* 560 F.Supp.2d 1326 (Ct. Int'l Trade 2008) ................................................................8

**Statute:**

517(g) of the Tariff Act of 1930 ...............................................................2

19 U.S.C. 1517 ..................................................................................1

19 U.S.C. 1517(b)(4)(A) ......................................................................4,5,9

19 U.S.C. 1517(g) ..............................................................................1

19 U.S.C. 1517(4) ..............................................................................1

19 U.S.C. 4301 ..................................................................................1

**Regulation:**

19 CFR 165.16 ..................................................................................10

19 CFR 351.225 .................................................................................12

19 CFR 351.227 .................................................................................12

89 Fed Reg 19239 (April 17, 2024) .......................................................... 11,12

## I.   <u>INTRODUCTION</u>

1.    This is an appeal challenging the June 14, 2023 decision of U.S. Customs and Border Protection ("CBP") and its Administrative Review determination of October 23, 2023 made in connection with the Enforce and Protect Act ("EAPA") Case number 7722.  *See* 19 U.S.C. §1517(g).

Plaintiff Vanguard Trading Company LLC ("Vanguard") was the named respondent in the EAPA matter, and was a party to the proceeding, having actively participated in the process.

The Plaintiff assert the following errors in CBP's final determinations:

- The EAPA (19 U.S.C. 4301 as implemented at 19 U.S.C. 1517) was never intended to be used to investigate and punish importers with a legitimate dispute as to classification and who otherwise provided full and complete information.   CBP should never have initiated this investigation and the resultant determination is unlawful.

- The EAPA (19 U.S.C. 1517(4)) requires that CBP seek guidance from the Department of Commerce where there is a question as to whether the goods fall within the scope of the order.   Notwithstanding the multiple requests of Vanguard, CBP failed to do so, and made a decision on scope without consulting with the master of the order, the U.S. Department of Commerce.

1

- CBP improperly refused to take legal notice of the scope ruling filed with the Department by Vanguard seeking to confirm that the product was not subject to the order.

- CBP improperly refused to consider the independent laboratory tests provided by VTC which showed that the product in question was outside of the scope of the order as the material was not primarily Silica, and thus the goods were outside of the scope of the order.

## II.    STATEMENT PURSUANT TO RULE 56.2(c)

### A.    Administrative Determination Under Review

This action is brought pursuant to 517(g) of the Tariff Act of 1930, as amended by the Trade Facilitation and Trade Enforcement Act of 2015 to contest the June 14, 2023 decision of U.S. Customs and Border Protection ("CBP") and its Administrative Review determination of October 23, 2023 made in connection with EAPA Case number 7722.  (PR 48 and 61)[1]

In the June 14, 2023 decision and October 23, 2023 review determination, CBP found that Vanguard was evading the order on Quartz Surface Products from China. (BPID 25 and PR 48 and 61)

---

[1] "PR" is a reference to the Public Record, "BPID" is a reference to the Confidential Record.

2

**B.**    <u>**Issues of Law**</u>

The Plaintiffs present the following issues of law.  In each instance, CBP's decision was not based on substantial evidence on the record, and was arbitrary and capricious, an abuse of discretion, and not otherwise in accordance with law.  The issues are:

1. **Issue.** Whether the EAPA permits an investigation and finding where the sole dispute was whether the merchandise was "in scope" or "outside of scope".  The purpose of the EAPA is to prevent false statements which result in the evasion of duties.  The purpose of the EAPA is not to force importers to enter goods as subject to antidumping duty orders where, as here, the scope was not clear at the time of entry.  Vanguard submits that the EAPA cannot be properly invoked where, as here, there were no materially incorrect factual statements, beyond a legitimate and good faith claim that the goods were not subject to the antidumping and countervailing duty orders.

2. **Issue.** Whether CPB erred when it failed to seek advice from the Department of Commerce as to whether the product falls within  the scope of the antidumping and countervailing duty orders.

3. **Issue.** Whether CBP should have taken into account the scope process initiated by Vanguard.  The Department has the legal authority to establish the scope

of an order and determine whether a product is, or is not, within the scope of an order.  CBP cannot ignore the Department.

4.  **Issue.**  The evidence of record establishes that the goods are not within the scope of the order.

### C.    Summary Of Arguments

In this submission, plaintiff will present the following arguments:

- The EAPA was intended to address evasion of antidumping and countervailing duty orders and was not intended to be used over mere disputes as to entry classification.   In this matter, the purported materially false statements were not  false, but rather reflected alternate views as to the facts. This was a vanilla dispute as to classification.

- The regulations clearly state that in the event of a dispute as to scope, CBP should seek formal advice from Commerce pursuant to 19 U.S.C. 1517(b)(4)(A) in order to determine whether these goods fall into the scope of the order.  CBP did not do so, choosing to go beyond its authority and resolve an issue as to disputed scope without seeking the advice from the master of the scope.   CBP further ignored its regulatory practice by failing to take into account the filing of a scope ruling request with Commerce by Vanguard;

- CBP placed certain lab test on the record as confidential documents in which the public versions indicated that such tests were relevant.  In fact, the lab tests placed on the record by CPB are wholly unrelated to this proceeding and are thus irrelevant to this proceeding and should not be considered in any fashion in this matter; and

- The only usable lab test of record is the lab test placed on the record by Vanguard. Such lab test detailed the materials that made up the goods the subject of this matter. Such laboratory test establishes that the product the subject of this EAPA proceeding is not "of Silica" and thus not subject to the orders; and

- Had CBP sought the advice from Commerce, based on the facts presented, Commerce would have concluded that mineral slabs were outside the scope of the antidumping duty order on Quartz from the People's Republic of China.

### D.    **Statement Of Facts**

The EAPA action was initiated on August 11, 2022 based on a request filed by Cambria Company LLC. (BPID 9)   Vanguard submitted responses to CBP. (BPID  6, 7, 15, 19, and 23. )

During the course of the investigation, Vanguard made multiple requests that CBP, pursuant to 19 U.S.C. 1517(b)(4)(A), seek advice from the Department of Commerce advice as to whether the goods fell within the scope of the antidumping duty order. CBP refused to do so. Vanguard filed a scope ruling request with the Department seeking confirmation that slabs made from minerals, not quartz were not subject to the antidumping and countervailing duty orders as falling outside of the scope of the order. CBP refused to permit any details about the scope ruling to be placed on the record, rejected the filing providing such information, and beyond

permitting a bare allegation that a scope ruling request had been filed, did not place further information on the record.  (PD-46)

The entries in question all claimed country of origin of China, an issue not challenged by CBP during the EAPA process.  All of the Commercial Documents submitted to Customs clearly stated that the products in question were mineral based slabs.  (BPID 6 and 7).  Based on the fact that these slabs were not made from quartz, and that the independent lab tests obtained by Vanguard confirmed that silica was not the predominate material, Vanguard properly entered the goods as type 1 entries not subject to the antidumping and countervailing duty order. (*Id.*)  CBP has no tests of record showing that these products fall within the scope of the order.  Vanguard obtained additional lab tests, but CBP refused to consider them, and otherwise rejected critical information including the details as to scope rulings filed with the Department of Commerce.

## III.    <u>STANDARD OF REVIEW</u>

An agency acts in an arbitrary and capricious manner when it fails to "articulate a satisfactory explanation" for a conclusion reached; courts frequently explain the applicable standard as an agency's failure to annunciate a "rational connection between the facts found and the choice made." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). In reviewing an arbitrary and capricious challenge to agency action, the reviewing court will "consider whether

the {agency's} decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Bowman Transp., Inc. v. Arkansas–Best Freight System, Inc.*, 419 U.S. 281, 285 (1974); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971). In *Motor Vehicle Mfrs. Ass'n. v. State Farms Ins.*, 463 U.S. 29, 43 (1983), the Supreme Court explains that an agency's reliance on an explanation "that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise{,}" is arbitrary and capricious.

The Federal Circuit explains that an agency abuses its discretion when its decision is "based on an erroneous interpretation of the law, . . . or represents an unreasonable judgment in weighing relevant factors." *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citation omitted). This Court, in assessing the reasonableness of an agency's decision to reject allegedly pertinent information, finds the following factors relevant to its analysis—burden of incorporating the information; probability of such information increasing the accuracy of calculated dumping margins, if incorporated; and the agency's interest in ensuring finality. See *Grobest & I-Mei Industrial (Vietnam) Co. v. United States*, 36 CIT __, __, 815 F. Supp. 2d 1342, 1365–67 (2012) (holding that an agency abused its discretion by rejecting untimely, but not burdensome to incorporate, information that, if considered, likely would have resulted in the agency reaching a different

7

conclusion); see also *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1207–08 (Fed. Cir. 1995) (holding that it was an abuse of discretion for an agency to reject corrective information that would have prevented imposition of millions of dollars' worth of unjustified duties).

## IV.   **ARGUMENT:**

### A.    *The EAPA Statute Was Intended to Address Evasion, Not to Address Legitimate Entries with Factual Disputes*

The primary purpose of the Enforce and Protect Act was to prevent the evasion of Antidumping and Countervailing Duties and not to punish importers with legitimate disputes as to the classification of goods at the time of entry.   Under the Customs laws, importers are not required to reach a standard of perfection, only a standard of reasonable care in their decisions about making entry. *United States v. Optrex America, Inc.* 560 F.Supp.2d 1326, 1335 (Ct. Int'l Trade 2008).  The EAPA statute, as enforced by CBP appears to ignore this underlying principle of Customs Law.  The purpose of the Act was also to punish false statements.   This is reflected by the fact that the EAPA statute expressly does not punish "clerical errors". In this case, we do not have material false statements.  As noted in the section on relevant facts, the Country of Origin was properly declared as China.  (BPID 6 at 5, 8) The goods were fully and properly described on the entry paperwork and related documents as "artificial marble".    This, again, was fully and completely accurate.

8

Other entries were described as Veined Acrylic Sheet, properly reflecting the significant amount of acrylic in the final material. (BPID 7 at 6)   That the goods were not described as petitioner desired – quartz slab – does not make these other descriptions "materially false".  There is no formal "name" for this product and all of the names used accurately reflect alternate names for the products.   The manufacturing process was also accurately provided describing the 4th Generation FriTech process and the other materials.  This process uses no natural quartz. The resultant product is made with both FriTech material and other minerals. (BPID 6 at 25)

### B.    CBP Should Have Sought Advice from Commerce

The statute expressly requires CBP to seek advice from Commerce with respect to whether goods fall within the scope of the order.  The statute states:

> **(A)In general**
> If the Commissioner receives an allegation under paragraph (2) and is unable to determine whether the merchandise at issue is covered merchandise, the Commissioner shall—
>
> **(i)**refer the matter to the administering authority to determine whether the merchandise is covered merchandise pursuant to the authority of the administering authority under subtitle IV; and
>
> **(ii)**notify the party that filed the allegation, and any other interested party participating in the investigation, of the referral.

19 U.S.C. 1517(b)(4)(A)

This language is clear and unequivocal. There is no requirement that the **respondent** request that CBP seek this advice.  Rather, as clearly stated, CBP is

required to seek this advice where, as here, there is a legitimate dispute as to scope. Critically, the statute uses the directive "shall" rather than "may".   This recognizes the long-standing principle that the master of the scope of an antidumping duty order is Commerce, not CBP, and that CBP must ultimately defer to Commerce in determining whether the goods are in or out of scope.  This is particularly important where, as here, the scope expressly considers Silica, but does not include other silicates and where CBP has no lab tests of record supporting its conclusion that the article is chief weight silica.   CBP's methodology in making its determination was overly simple, and critically, did not take into account whether CBP's definitions agreed with Commerce's definitions.

In this case, Vanguard expressly requested that CBP seek this advice from the Department on more than one occasion.  See  PD 32 at 2, BPID 19 at 3, BPID 23 at 2 – 6.  In such request, Vanguard emphasized the non-traditional nature of the slab and the lab tests of record which showed that the product was not chief weight silica. Vanguard stated:

- Rather, such products are a different surface product made from silicates and frits. Accordingly, CBP should seek clarification from DOC as to whether the products in question fall within the scope of the antidumping duty order on quartz slab from the People's Republic of China. . . . Furthermore, the merchandise at issue is outside of the scope of the order and CBP should seek confirmation of this fact from the DOC. (Response to Supplemental Request for Information, PD 32 at 2 and 4)

- The regulations at 19 CFR 165.16 expressly provides that CBP may suspend an EAPA action and obtain clarification from the Department

as to whether the goods are within the scope of the order. It is also quite clear that if these goods are not within the scope of the order, the EAPA investigation necessarily must fail…. The product imported by Vanguard is not chief weight silica, but rather is composed of other substances including certain **silicates and therefore must be outside the scope**…. As shown in the attached test report from the [                    ], the quartz component (silica) was 33.9 and when adjusted for Loss on Ignition was 29.7%. In contrast, the [            ] component was [        ] and when adjusted for Loss on Ignition was [        ]. (Request for Action of February 27, 2023)(BPID 19 at 3-4.)

- In this matter, CBP is under an obligation to suspend this ongoing EAPA investigation until after the conclusion of the now requested scope inquiry, and if CBP deems appropriate, to "refer" this matter to the Department as clearly required in the regulations…. In its submission to CBP, VTC provided a test report from the [National Brick Research Center at Clemson University], for the slab at issue. It shows that the quartz component (silica) was 33.9 and when adjusted for Loss on Ignition was 29.7%. In contrast, the [

  ]. (Written Argument of VTC, BPID 23 at 3, 6)

In this case CBP also ignored even the existence of the scope ruling request by Vanguard.   This decision to ignore such request is contrary to the regulatory statements of CBP.  In the Federal Register notice implementing the regulations, CBP stated:

> *Comment:* One commenter argued that CBP should provide for a mechanism for an interested party to seek relief when CBP improperly refuses to refer a scope issue to Commerce and for situations where CBP improperly suspends liquidation of entries when the scope issue is being disputed.

> *Response:* CBP disagrees with the commenter's argument. CBP works with the appropriate internal subject matter experts during an EAPA investigation and, in addition, works with the Customs Liaison Unit at Commerce, and refers cases to Commerce regarding the scope of an AD/CVD order when appropriate. …. Apart from CBP's authority to refer issues to Commerce for a covered merchandise determination**, an interested party also has the ability to seek resolution of a**

**scope issue before Commerce** pursuant to Commerce's regulations found at 19 CFR 351.225 and 19 CFR 351.227. CBP does not believe that an additional mechanism is needed in this rulemaking.

89 Fed Reg 19239 (April 17, 2024) at 19246 - 19247

As an initial matter, there is no evidence of any kind that CBP had discussions with the Customs Liaison Unit at Commerce. Furthermore, CBP expressly stated in its discussion of comments on the new regulation that since an interested party could seek a scope ruling, other procedures were not needed. However, in this case, in addition to apparently not discussing this matter with the Customs Liaison Unit, CBP also refused to take into account the filing of such scope ruling by an interested party. These acts are directly contrary to CBP's stated regulatory position. Vanguard did everything expected of it to have the scope reviewed in the EAPA proceeding by the appropriate agency, but did not receive such review.

Finally, as discussed in Section D below, Vanguard believes that Commerce would have found that the type of material the subject of this EAPA investigation would not necessarily fall within the scope of the order, and that it would come down to an entry-by-entry evaluation of each slab. Simply put, Commerce would recognize the existence of mineral slab as being outside the scope of the order. The ultimate evaluation of each slab can only be undertaken once the scope is clarified.

From the regulations, it is clear that CBP cannot make a decision to scope on its own initiative where there is a legitimate dispute as to scope, and to the extent

that the scope applies to the transactions. CBP should have sought advice from Commerce as to whether the goods were subject to the scope of the order, and whether or not it did so, CBP was obligated to take notice of the scope ruling process at Commerce. It did not do so. CBP's actions went beyond the regulations.

C. *The Lab Tests Placed on the Record do not Support a Finding of Evasion*

The only actual evidence as to the make-up of the slabs appears to be the two lab tests placed on the record by CBP and the lab test supplied by Vanguard. However, only one of those tests is in fact valid – that of the lab test supplied by Vanguard. Specifically, CBP placed on the record two lab tests described as "CBP laboratory reports analyzing the material composition for the products described as artificial quartz stone and artificial marble". (BPID 21) These test reports are inapplicable and also directly contradictory to the statements made in the "Notice of Determination as to Evasion" (BPID 25).

    1.    The Lab Tests Supplied by CBP Are Incomplete and the Other Lab Test Controls

The confidential version of the lab tests supplied by CBP were not released until this matter was received at the CIT. (BPID 21 and PD 40) As this matter was processed by CBP prior to the effective date of *Royal Brush Manufacturing, Inc. v. United States*, 75 F.4[th] 1250 (Fed. Cir. 2023), such confidential data was never released to the parties during the administrative action and the flaws were not

Public Version

revealed by the public version of the lab tests.   Quite to the contrary, the public versions appeared to be applicable and germane to the analysis.   But they were not. This court can examine the actual tests.

The first lab test ([                    ]) , related to an entry made on [        ] and is the primary lab test which discusses the nature of the sample taken by CBP. (BPID 21).  However, such lab test clearly cannot apply to the subject of this EAPA matter.   The lab test report clearly states that the importer was [

], that the manufacturer was [                ] and critically that the origin was [     ].  (BPID 21 at 3) These are wholly inconsistent with the agreed facts in this matter.  This is a lab test for a different importer, different manufacturer and from a different country of origin.  It necessarily has no relevance at all in this EAPA matter.   CBP has not explained how such a divergent lab test would be applicable here.

The second lab test ([                    ]) is equally flawed.  In this case, the lab test report states that the importer is [                ] and the manufacturer is [                    .].  (BPID 21 at 6) Even assuming that [                ] is a typographically-challenged identification of Vanguard Trading Company LLC,  with ([     ]  instead of Vanguard, [     ]  instead of Trading, and [     ] instead of [     ], the lab test is still inapplicable as it is for a different manufacturer – [                    .].    Further, unlike the first

flawed lab report, this lab report is devoid of any discussions and analysis, and omits most of the basic information provided in the first report.  This report is simply deficient and on its face has no ties to the substance of this EAPA matter.

In sum, these lab reports are so deficient on their face, that they are simply unusable.  In contrast, the only valid test of record is the one provided by Vanguard.[2] This test was made of a specific slab from the series of slabs imported by Vanguard This was a detailed test of multiple samples from a single slab and was undertaken by [                                        ].  The test report provided a detailed list of all of the materials found in the sample.  The report listed both the percentage of the inorganic material and corrected for loss of ignition (the destruction of the inorganic materials in the first step of testing).   The report found the following percentages:

| Material | Percentage (Inorganic) | Percentage (Corrected for LOI |
|---|---|---|
| Quartz | 33.9% | 29.7% |
| Muscovite | 2.2% | 1.9% |
| Ferro-tschermakite | 16.9% | 14.8% |
| Ferri-winchite | 40.2% | 35.3% |
| Clinochlore | 1.1% | 1.0% |
| Anorthite | 5.6% | 4.9% |

---

[2] Vanguard notes that it attempted to submit another lab test in the EAPA matter, but CBP rejected such additional lab test and all evidence of such additional lab test was removed from the record.

| Total | 99.9% | 87.2% |
|---|---|---|

See Testing Summary (BPID19 at 9)

Based on the LOI calculation, the resin was approximately 12.5%.   This test clearly shows that the quartz (Silica) is 29.7%.   The other two major materials are Ferri-winchite (35.3%) and Ferro-tschermakite (16.9%) and a minor material is Anorthite (4.9%).   As described in the test report, neither Ferri-winchite, nor Ferro-tschermakite nor Anorthite are Silica.   The chemical formula for Ferri-winchite is $NaCaMg_4FE(Si_8O_{22})(OHF)_2$. (BPID 19 at 11).   The chemical formula for Ferro-tschermakite is $K_{0.16}Na_{0.24}Ca_{1.86}Mg_{1.22}Ti_{0.1,}Fe_{2.42,}Al_{3.3}Si_8O_{22}(OH)_2$ (BPID 19 at 11). The chemical formula for Anorthite is $Na_{0.482}Ca_{0.518}Al_{1.518}Si_{2.182}O_8$.   None of these materials contain Silica, and combined they add up to over 57% of the weight of the materials.   Even if all of the remaining materials were "pure Silica", which they are not, the total Silica content could not exceed 32.6%, which amount is less than the 35.3% provided by the Ferri-winchite.   These goods are "of" Ferri-winchite and thus this is clear evidence that the slab in question is not of "chief weight" Silica and thus falls outside of the scope of the order.  CBP did not give this proper weight.

In response to this compelling lab test, CBP falls back on the patent and the initial description of the goods in the patent.   However, the patent is, in fact, a theoretical discussion of the material and between the issuance of the patent, which does not have fixed material specifications, and the production of the goods, the

16

formulation could have changed to ensure that the goods were outside of the scope of the order. The patent should be given no weight when compared to the extant lab test.  The patent is a theoretical value and the lab test provided by Vanguard is an actual value.

2. ***The Lab Reports Contradict the Notice of Determination as to Evasion***

In its determination as to evasion CBP stated that "CBP was unable to take a sample of the Importer's products because no entries were imported into the United States after the investigation was initiated."  (BPID 4)  And yet, CBP claims to have taken and tested samples, as indicated in the flawed lab reports, from entries which were made after the date of initiation.  (The investigation was initiated on August 11, 2022, but was not announced until November 17, 2022).  So it appears that either CBP **knowingly** placed on the record  irrelevant lab tests bracketed in such a fashion as to hide the truth or the CBP had, in fact, samples of the importers products, and could have conducted more lab tests to determine the accuracy and applicability of the test placed on the record by Vanguard.  Rather than doing so, and taking advantage of the "confidential" nature of the EAPA proceedings, CBP placed on the record inaccurate information which could not be corrected as the flaws were "hidden" until litigation.  Critically, such lab tests also establish that either the notice of initiation was flaw and/or the lab tests did not stand for the proposition for which they were presented.

D.    ***Commerce Would Have Found That the Product Was Out of Scope***

Had CBP followed its legal obligations and requested advice from the Commerce in a timely fashion, Commerce would have found that the products at issue are out of scope.  In considering scope, Commerce would have considered whether a molecule which contains a Silica component retains its "silica" status, or whether this molecule, where the Silica is bonded, at the atomic level, loses its Silica nature.  This is similar to the fact that the water molecule is made of two hydrogen atoms bonded to an oxygen atom at an atomic level.   Water and Oxygen are very different materials.  Water can be used to suppress a fire, while pure oxygen will cause the fire to grown in size and magnitude. In this case, while the compounds that went into the slab may have contained Silica molecules permanently bound to other molecules, such molecules were no more "Silica" than water is Oxygen.

As discussed in Section C above, the lab test supplied by Vanguard by [                                                    ] (BPID 19 at 7) provided a detailed list of all of the materials found in the sample.   The report listed both the percentage of the inorganic material and corrected for loss of ignition (the destruction of the inorganic materials in the first step of testing).   The report found the following percentages:

| Material | Percentage (Inorganic) | Percentage (Corrected for LOI |
|----------|------------------------|-------------------------------|
| Quartz | 33.9% | 29.7% |

| Material | Percentage (Inorganic) | Percentage (Corrected for LOI |
|---|---|---|
| Muscovite | 2.2% | 1.9% |
| Ferro-tschermakite | 16.9% | 14.8% |
| Ferri-winchite | 40.2% | 35.3% |
| Clinochlore | 1.1% | 1.0% |
| Anorthite | 5.6% | 4.9% |
| Total | 99.9% | 87.2% |

See Testing Summary (BPID19 at 9)

Based on the LOI calculation, the resin was approximately 12.5%. This clearly shows that the quartz (Silica) is 29.7%. The other two major materials are Ferri-winchite (35.3%) and Ferro-tschermakite (16.9%) and a minor material is Anorthite (4.9%). As described in the test report, neither Ferri-winchite, nor Ferro-tschermakite nor Anorthite are Silica. The chemical formula for Ferri-winchite is $NaCaMg_4FE(Si_8O_{22})(OHF)_2$. (BPID 19 at 11). The chemical formula for Ferro-tschermakite is $K_{0.16}Na_{0.24}Ca_{1.86}Mg_{1.22}Ti_{0.1}, Fe_{2.42}, Al_{3.3}Si_8O_{22}(OH)_2$ (BPID 19 at 11). The chemical formula for Anorthite is $Na_{0.482}Ca_{0.518}Al_{1.518}Si_{2.182}O_8$. None of these materials contain Silica, and combined they add up to over 57% of the weight of the materials. Even if all of the remaining materials were "pure Silica", which they are not, the total Silica content could not exceed 32.6%, which amount is less than the 35.3% provided by the Ferri-winchite. These goods are "of" Ferri-winchite.

In contrast, the only "support" which has not been totally discredited as

completely irrelevant, (see Section B(1) above), is the patent, which is a description of the product, but does not include the make-up of the actual importations and the adjustments which were made in the formulation of the product from the theoretical patent to the practical goods imported.

These were all significant issues which went beyond CBP's simplistic interpretation and required Commerce's input to consider these complex issues. CBP failed to request guidance from Commerce, ignored direct evidence of a lab test for the series of goods subject to this EAPA action, and used the general formula from a patent without taking into account that such formulations can be adjusted. Had this been submitted to Commerce, and had Commerce, based on a full and complete record, would necessarily have concluded, at a minimum, that there exists a category of products of slabs made of non-quartz minerals which would be outside the scope of the order on quartz.

## V.  **CONCLUSION**

Based on the foregoing, plaintiff respectfully requests that this Court grant their motion for Judgment on the Agency Record and remand this case to Commerce with instructions consistent with the points set forth in this memorandum.  Specifically, the Court should find:

Based on the foregoing, plaintiff respectfully requests that this Court grant the motion for Judgment on the Agency Record and remand this case to CBP with

instructions consistent with the points set forth in this memorandum.  Specifically,

the Court should find:

- The EAPA was intended to address evasion of antidumping and countervailing duty orders and was not intended to be used over mere disputes as to entry classification;
- CBP should have sought advice from Commerce pursuant to 19 U.S.C. 1517(b)(4)(A) as to whether these goods fall into the scope of the order, and having failed to do so, should have taken into account the filing of a scope ruling request with Commerce by Vanguard;
- The lab tests placed on record by CPB are irrelevant to this proceeding and should not be considered in any fashion in this matter;
- The lab test placed on the record by Vanguard is the only applicable test of record.  Such laboratory test establishes that the product the subject of this EAPA proceeding is not "of Silica" and thus not subject to the orders; and
- Had Commerce been requested to examine scope, Commerce would have properly concluded that the goods the subject of this action were outside of the scope of the order.

Respectfully submitted,

/s/ David Craven
David Craven

David J. Craven
Craven Trade Law LLC
3744 N Ashland Avenue
Chicago, IL 60613
(773)709-8506
David.craven@tradelaw.com

Counsel to Vanguard Trading Company LLC

Dated: June 20, 2024

21