UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HON. TIMOTHY M. REIF, JUDGE

_____

|  |  |  |
|---|---|---|
| VANGUARD TRADING COMPANY LLC, | : | |
| | : | |
| Plaintiff, | : | Court No. 23-00253 |
| | : | |
| v. | : | |
| | : | |
| UNITED STATES, | : | |
| | : | |
| Defendant. | : | |
| | : | |

_____

## DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

JUSTIN R. MILLER
Attorney-in-Charge

AIMEE LEE
Assistant Director

Of Counsel:

Chelsea A. Reyes
Nicolas Morales
Office of Chief Counsel
U.S. Customs and Border Protection

NICO GURIAN
Trial Attorney
Civil Division, U.S. Dept. of Justice
Commercial Litigation Branch
26 Federal Plaza, Room 346
New York, New York 10278
Tel. (212) 264-0230 or 0583
*Attorneys for Defendant*

Dated: October 28, 2024

# **TABLE OF CONTENTS**

BACKGROUND ……………………………………………………………………3

LEGAL STANDARD ………………………………………………………………2

    I.     The Enforce And Protect Act …………………………………………………..3

    II.    The Orders and Investigation…………………………………………………...5

ARGUMENT …………………………………………………………………………..7

    I.     Standard of Review……………………………………………………………..7

    II.    The Record Contains Substantial Evidence Of Evasion …………………………8

    III.   Vanguard's Challenges to R&R's Affirmance of TRLED's Evasion
         Determination Are Not Persuasive ……………………………………….…...14

        a.  Vanguard's Statements and Omissions Properly Formed
            Basis for Finding of Evasion ………………………………………………...14

        b.  CBP Was Neither Required To Make A Referral To Commerce
            Nor Pause Its Investigation Once Vanguard Submitted A Scope Request ….16

        c.  What Commerce "Would Have" Done Is Irrelevant In Light
            Of Commerce's Actual Scope Determination………………………...……..18

CONCLUSION ………………………………………………………………………19

## **TABLE OF AUTHORITIES**

**Cases**

*American Pacific Plywood, Inc. v. United States,*
Court No. 20-03914, 2023 WL 4288346 (Ct. Int'l Trade June 22, 2023) ..................................... 9

*Diamond Tools Tech. LLC v. United States*,
545 F. Supp. 3d 1324 (Ct. Int'l Trade 2021) ................................. 9

*Essar Steel Ltd. v. United States*,
678 F.3d 1268 (Fed. Cir. 2012)................................................................ 8

*FPC v. Transcon. Gas Pipe Line Corp.*,
423 U.S. 326 (1976)................................................................................. 8

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983)................................................................................... 9

*PSC VSMPO-Avisma Corp. v. United States*,
688 F.3d 751 (Fed. Cir. 2012)............................................................ 8, 9

*Royal Brush Mfg., Inc. v. United States,*
75 F.4th 1250 (Fed. Cir. 2023) …………………………………………………………13

*Royal Brush Mfg., Inc. v. United States*,
545 F. Supp. 3d 1357 (Ct. Int'l Trade 2021) ....................... 9, 14

*SKF USA Inc. v. United States*,
263 F.3d 1369 (Fed. Cir. 2001).............................................................. 8

*Star Fruits S.N.C. v. United States*,
393 F.3d 1277 (Fed. Cir. 2005).............................................................. 8

*Sunpreme Inc. v. United States*,
946 F.3d 1300 (Fed. Cir. 2020)............................................................ 17

*WelCom Prods., Inc. v. United States*,
865 F. Supp. 2d 1340 (Ct. Int'l Trade 2012) ................................ 7

*Wheatland Tube Co. v. United States*,
161 F.3d 1365 (Fed. Cir. 1998)............................................................... 7

**Statutes**

19 U.S.C. § 1517 ........................................................................................................................ 1

19 U.S.C. § 1517(a)(5) ............................................................................................................... 4

19 U.S.C. § 1517(a)(5)(A) ........................................................................................................ 15

19 U.S.C. § 1517(b)(1) ............................................................................................................... 3

19 U.S.C. § 1517(b)(4)(A) ..................................................................................................... 4, 16

19 U.S.C. § 1517(c)(1)(A) ........................................................................................................... 4

19 U.S.C. § 1517(c)(2) ............................................................................................................ 3, 4

19 U.S.C. § 1517(c)(3)(a) ..................................................................................................... 12, 14

19 U.S.C. § 1517(e) .................................................................................................................... 3

19 U.S.C. § 1517(f) ..................................................................................................................... 5

19 U.S.C. § 1517(g)(1) ................................................................................................................ 5

19 U.S.C. § 1517(g)(2) ................................................................................................................ 7

28 U.S.C. 1581(c) ................................................................................................................... 2, 18

**Regulations**

19 C.F.R. § 165.21 ...................................................................................................................... 5

19 C.F.R. § 165.22 ...................................................................................................................... 5

19 C.F.R. § 165.23 ...................................................................................................................... 5

19 C.FR. 1615.16(d) .................................................................................................................. 16

19 U.S.C. § 1517(c)(1)(A) ........................................................................................................... 7

**Other Authorities**

*Certain Quartz Surface Products from the People's Republic of China: Final Affirmative Countervailing Duty Determination, and Final Affirmative Determination of Critical Circumstances*, 84 Fed. Reg. 23760 (May 23, 2019) ................................................................. 5

*Certain Quartz Surface Products from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances*, 84 Fed. Reg. 23767 (May 23, 2019) ................................................... 5

UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HON. TIMOTHY M. REIF, JUDGE

_____
                                     :

VANGUARD TRADING COMPANY LLC,    :
                                       :

                       Plaintiff,    :      Court No. 23-00253
                                       :

           v.                 :

UNITED STATES,                     :

                       Defendant.    :
                                       :
_____:

## <u>DEFENDANT'S RESPONSE TO PLAINTIFF'S RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD</u>

Defendant, the United States, respectfully submits this response to plaintiff Vanguard

Trading Company LLC's (Vanguard) motion for judgment upon the agency record.  In this

action, Vanguard challenges U.S. Customs and Border Protection's (CBP) administrative review

decision, following an investigation pursuant to the Enforce and Protect Act (EAPA), 19 U.S.C.

§ 1517, that Vanguard imported its FriTech surface product by means of evasion.  As discussed

below, CBP's decision is supported by substantial evidence and should be sustained.

As a preliminary matter, Vanguard's opening brief repeatedly insists that, if CBP had

referred this matter to the U.S. Department of Commerce (Commerce), Commerce would have

conducted a scope review and determined that Vanguard's FriTech countertop surface product is

not within the scope of the antidumping and countervailing duty (AD/CVD) orders on certain

quartz surface products from China.  For Vanguard, such a determination would necessarily

mean that it did not evade AD/CVD duties when it indicated on entry paperwork that its

merchandise was type 01 and not subject to AD/CVD.

What Vanguard fails to mention is that on January 25, 2024, in response to Vanguard's own scope request and months before Vanguard filed its opening brief, Commerce issued a final scope ruling that determined that Vanguard's FriTech countertop surface product *is* within the scope of the AD/CVD orders on certain quartz surface products from China.[1]  Vanguard did not seek judicial review of Commerce's determination under 28 U.S.C. § 1581(c) and so Commerce's determination is final as to Vanguard's FriTech product.  Accordingly, Vanguard's arguments about U.S. Customs and Border Protection (CBP)'s failure to refer the matter to Commerce and hypotheticals about what Commerce "would have" done if given the chance ring hollow.

As demonstrated below, CBP's Regulations & Rulings (R&R) did not act arbitrarily, capriciously, or erroneously in concluding that there is substantial evidence on the record to support a finding of evasion—a conclusion that hinged on the same determination to the question of scope that Commerce arrived at in its own final scope ruling.

## I.     Administrative Determination Under Review

Vanguard challenges CBP's administrative review decision in EAPA Case No. 7722, issued on October 23, 2023.  RR Administrative Review Determination, Public Admin. Rec. (P.R.) 61 (R&R Review).

## II.     Issues Presented For Review

1. Whether CBP's conclusion in the R&R Review that the agency record contains substantial evidence of evasion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

---

[1] Commerce's final scope ruling is publicly available via ACCESS, Commerce's online depository of all documents filed in AD/CVD proceedings.  For ease of reference, the Government has also attached the final scope ruling as Exhibit 1.

2. Whether CBP was required to either refer this matter to Commerce for a scope ruling or pause its EAPA investigation once Vanguard submitted its own scope request to Commerce.

## BACKGROUND

### I.    The Enforce And Protect Act

In 2016, the President signed into law The Trade Facilitation and Trade Enforcement Act of 2015 (TFTEA), Pub. L. No. 114-125, 130 Stat. 122 (2016).  Title IV, Section 421 of TFTEA, commonly referred to as the "Enforce and Protect Act" or "EAPA," established a new CBP administrative procedure for investigating allegations of evasion of AD/CVD orders as part of the agency's efforts to ensure a level playing field for domestic industries.  *See generally* https://www.cbp.gov/sites/default/files/assets/documents/2016Oct/Trade%20Facilitation%20and%20Trade%20Enforcement%20Act%20of%202015%20-%20Overview.pdf.

Under EAPA, federal agencies or interested parties—including U.S. and foreign manufacturers, producers, exporters; certified unions or recognized unions or groups of workers; and trade or business associations in a particular industry—may submit allegations to CBP that merchandise covered by an AD/CVD order has entered the United States through evasion.  If such allegations reasonably suggest that evasion is occurring, CBP must initiate an investigation within 15 calendar days of receiving an allegation.  19 U.S.C. § 1517(b)(1).  Within 90 calendar days, CBP must make an initial determination of whether there is reasonable suspicion of evasion and, if so, issue interim measures, which includes the suspension and extension of liquidation for certain entries.  19 U.S.C. § 1517(e).  The EAPA grants CBP broad discretion to determine the investigation's scope and means, including the authority to collect and verify any information it deems necessary to make its evasion determination.  19 U.S.C. § 1517(c)(2).

CBP's regulations set forth the types, and requirements for the submission, of factual information by parties. 19 C.F.R. § 165.23. For example, parties to the investigation may voluntarily submit information to CBP or may provide information in response to requests by CBP. *Id.* Parties to the investigation have 200 days from the date on which the investigation was initiated to submit factual information on the record, and 230 calendar days to submit written arguments. *Id.* Parties to the investigation have 15 calendar days to submit responses to other parties' written arguments. *Id.* Interested parties who are not parties to the investigation may provide information only in response to requests by CBP. *Id.*

During an investigation, CBP maintains an administrative record of material obtained and considered by CBP during the investigation, as well as record information submitted by interested parties. 19 U.S.C. § 1517(c)(2); 19 C.F.R. § 165.21. No later than 300 calendar days after an investigation's initiation, CBP is required to make a determination as to whether the administrative record contains substantial evidence to conclude that AD/CVD duties have been evaded. 19 U.S.C. § 1517(c)(1)(A); 19 C.F.R. § 165.22. If CBP "is *unable* to determine whether the merchandise at issue is covered merchandise" CBP "shall refer" the matter to Commerce for a scope review. 19 U.S.C. § 1517(b)(4)(A). If CBP refers the matter "[t]he period required for any referral and determination" is not counted in calculating CBP's time to make a determination. *Id*. at § 1517(b)(4)(C).

An evasion occurs when covered merchandise is entered by a material and false document, statement, or act, or material omission, which results in a cash deposit, security, or applicable AD or CVD amount being reduced or not applied. 19 U.S.C. § 1517(a)(5). Interested parties are permitted to request an administrative review of the determination as to evasion, and CBP must issue a final administrative review no later than 60 business days after such a request.

19 U.S.C. § 1517(f). EAPA allows for judicial review in this Court of CBP's final administrative review and the determination as to evasion, provided that an action is commenced within "30 business days" after CBP completes an administrative review under subsection (f). 19 U.S.C. § 1517(g)(1).

## II.    The Orders and Investigation

On May 23, 2019, the U.S. Department of Commerce issued antidumping order A-570-084 and countervailing duty order C-570-085, which set forth the agency's determination that imports of Chinese Quartz Surface Products (QSP) are subject to antidumping and countervailing duties. *Certain Quartz Surface Products from the People's Republic of China: Final Affirmative Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances*, 84 Fed. Reg. 23767 (May 23, 2019); *Certain Quartz Surface Products from the People's Republic of China: Final Affirmative Countervailing Duty Determination, and Final Affirmative Determination of Critical Circumstances*, 84 Fed. Reg. 23760 (May 23, 2019) (collectively, the Orders).

On August 11, 2022, CBP's Trade Remedy & Law Enforcement Directorate (TRLED) initiated a formal EAPA investigation in response to an allegation of evasion filed by Cambria Company LLC (Cambria). TRLED Final Determination Notice (P.R. 48) (TRLED Determination). Cambria alleged that Vanguard evaded the Orders by importing its merchandise as "artificial marble and/or stone" when it should be properly described as QSP and subject to the Orders. Notice of Initiation and Interim Measures, Confidential Admin. Rec. Doc (C.R.) 9. CBP's ensuing investigation was designated EAPA Case No. 7722.

As part of its investigation, TRLED issued Requests for Information (RFI) questionnaires to Vanguard and its Chinese suppliers to more fully understand the merchandise that Vanguard

was importing.  TRLED Determination at 12; Vanguard RFI Questionnaire (C.R. 10); Supplier

RFI Questionnaires (C.R. 11, 12, 13, 14).  As discussed more fully below, Vanguard and its

Chinese suppliers failed to substantively respond to CBP's RFIs, or the supplemental RFI CBP

issued to Vanguard on February 6, 2023.  TRLED Determination at 13-14; Vanguard RFI

Response (C.R. 16); Vanguard Supplemental RFI Questionnaire (C.R. 17); Chinese Supplier RFI

Response (C.R. 20); Vanguard Response to Supplemental RFI Questionnaire (P.R. 32). CBP also

issued CF-28 requests in response to which Vanguard provided information packets on its

merchandise that referenced two patent applications.  CF-28 Response re: Entry 9748 (C.R. 7);

CF-28 Response re: Entry 7687 (C.R. 8).

On February 27, 2023, Vanguard voluntarily submitted a Request for Action and

Voluntary Submission of Factual Information (VFI).  VFI (C.R. 19).  Vanguard's submission

included a test report purporting to analyze characteristics of the slab subject to CBP's EAPA

investigation and concluding that the slab was not chief weight silica.  TRLED Determination at

15; VFI at 7 (C.R. 19).  Vanguard's VFI also urged CBP to seek Commerce's input on whether

the covered merchandise was within the scope of the Orders.  *Id.*

On May 12, 2023, Vanguard filed a scope ruling request with Commerce, requesting that

Commerce determine whether Vanguard's FriTech surface product is covered by the scope of

the Orders.  Gov't Ex. 1 at 1.

On June 14, 2023, TRLED issued a notice of determination of evasion, finding

substantial evidence that Vanguard entered Chinese QSP into the United States by means of

evasion by claiming the merchandise was "artificial marble and/or artificial" stone when the

merchandise should have been described as QSP.  *See* TRLED Determination.  As a result, CBP

suspended or continued to suspend Vanguard's entries, rate-adjusted any previously extended

entries to type 03 (AD/CVD), and continued to require single transaction bonds as appropriate. *Id.*

At Vanguard's request, R&R conducted an administrative *de novo* review of the TRLED Determination. R&R Review. On October 23, 2023, R&R affirmed TRLED's determination of evasion, finding that there was substantial evidence on the record to support a finding of evasion. *Id.* Vanguard brought this action to challenge the R&R Review.

On January 25, 2024, Commerce issued a final scope ruling in response to Vanguard's request and determined that Vanguard's FriTech surface product is within the scope of the Orders.[2] Gov't Ex. 1.

## ARGUMENT

### I.  Standard of Review

In reviewing CBP's determinations, this Court considers whether CBP complied with procedures under the EAPA and whether, in reaching its ultimate determination on evasion, any determination, finding, or conclusion made by CBP is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. 19 U.S.C. § 1517(g)(2).

"Courts look for a reasoned analysis or explanation for an agency's decision as a way to determine whether a particular decision is arbitrary, capricious, or an abuse of discretion." *Wheatland Tube Co. v. United States*, 161 F.3d 1365, 1369 (Fed. Cir. 1998). "An abuse of discretion occurs where the decision is based on an erroneous interpretation of the law, on factual findings that are not supported by substantial evidence, or represent an unreasonable judgment in weighing relevant factors." *WelCom Prods., Inc. v. United States*, 865 F. Supp. 2d 1340, 1344

---

[2] On October 9, 2024, counsel for the Government alerted Vanguard's counsel to the fact of Commerce's final scope ruling. Counsel for Vanguard declined to amend Vanguard's brief.

(Ct. Int'l Trade 2012) (citing *Star Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005)).  "An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."  *SKF USA Inc. v. United States*, 263 F.3d 1369, 1382 (Fed. Cir. 2001) (citations omitted).

When reviewing CBP's determinations, "absent constitutional constraints or extremely compelling circumstances," this Court "will defer to the judgment of an agency regarding the development of the agency record."  *PSC VSMPO-Avisma Corp. v. United States*, 688 F.3d 751, 760 (Fed. Cir. 2012) (explaining the Court's role in reviewing Commerce's antidumping duty administrative determinations).  "To do otherwise would 'run the risk of propelling the courts into the domain which Congress has set aside exclusively for the administrative agency.'"  *Id.* (quoting *FPC v. Transcon. Gas Pipe Line Corp.*, 423 U.S. 326, 333 (1976)).  Rather, "{t}he role of judicial review is limited to determining whether the record is adequate to support the administrative action."  *PSC*, 688 F.3d at 761; *see also Essar Steel Ltd. v. United States*, 678 F.3d 1268, 1278 (Fed. Cir. 2012) (reversing order instructing Commerce to consider extra-record information because "the trial court's order usurps agency power, undermines Commerce's ability to administer the statute entrusted to it, contradicts important principles of finality, and discourages compliance").

## II.    The Record Contains Substantial Evidence of Evasion

R&R properly determined there was substantial evidence of evasion.  During an EAPA investigation, CBP "shall make a determination, based on substantial evidence, with respect to whether covered merchandise was entered into the customs territory of the United States through evasion."  19 U.S.C. § 1517(c)(1)(A).  Substantial evidence requires that an agency articulate "a 'rational connection between the facts found and the choice made.'"  *Royal Brush Mfg., Inc. v.*

*United States*, 545 F. Supp. 3d 1357, 1365 (Ct. Int'l Trade 2021) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983)). That another conclusion could rationally be drawn from the record evidence does not defeat an agency's determination. *Id.*

As this Court has recently clarified, the "substantial evidence" standard requires CBP to explain "the evidence on which it relied and why it found the totality of that evidence supported its conclusion, and it addressed the parties' evidence and explained why it found that unconvincing." *American Pacific Plywood, Inc. v. United States,* Court No. 20-03914, 2023 WL 4288346, at *13 (Ct. Int'l Trade June 22, 2023). Thus, "in an EAPA proceeding the court is to determine whether Customs applied the substantial evidence standard in reaching its final determination," and if so, determine whether CBP's "conclusions are not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.*

To support a finding of evasion, R&R had to find substantial evidence of a "material and false statement or a material omission." *Diamond Tools Tech. LLC v. United States*, 545 F. Supp. 3d 1324, 1351 (Ct. Int'l Trade 2021).

First, R&R properly determined that Vanguard made both material false statements and material omissions when it submitted entry summary documentation indicating the relevant entries were type 01 consumption entries, as opposed to type 03 AD/CVD entries, omitting the relevant AD/CVD case numbers, and describing the merchandise as "artificial stone or marble." Vanguard's entry documentation is plainly "electronically transmitted data or information" contemplated by the statute, 19 U.S.C. § 1517(a)(5)(A), and R&R determined the statements and omissions were "material because the applicable cash deposits and antidumping and countervailing duties were not paid, and Vanguard interfered with the government's ability to

9

accurately track imports of QSP from China, to collect the applicable antidumping and countervailing duties due, and to determine and assess future antidumping and countervailing duties." R&R Review at 10.

Second, R&R properly determined that Vanguard's material statements on its entry paperwork were "false." For Vanguard's entry paperwork to contain false statements, R&R would need substantial evidence that the covered merchandise should have been entered as a type 03 AD/CVD entry of QSP subject to the Orders (*i.e.*, reach the same conclusion that Commerce did in its January 25, 2024 final scope ruling that Vanguard's FriTech product is within the scope of the Orders).

The Orders in this case cover QSP which "consist of slabs and other surfaces created from a mixture of materials that includes predominantly silica (*e.g.*, quartz, quartz powder, cristobalite) as well as a resin binder (*e.g.*, an unsaturated polyester)." 84 Fed. Reg. at 33,055-56. Importantly, "the scope of the orders only includes products where the silica content is greater than any other single material, by actual weight." *Id.* Finally, QSP "may also generally be referred to as an engineered stone or quartz, artificial stone, or quartz, agglomerated stone or quartz, synthetic stone or quartz, processed stone or quartz, manufactured stone or quartz, and Bretonstone®." *Id.*

In response to CF-28 requests issued by CBP, Vanguard provided information packets on its merchandise that referenced two patent applications, both of which CBP obtained as part of its investigation. CF-28 Response re Entry 7687 at 18 (C.R. 8). One such application was for the patent under the name, "An Environment-friendly Artificial Stone with Low Cost and High Strength and A Preparation Method Thereof'" (Patent 1) which Vanguard referenced in its CF-28 response for Entry 7687, one of Vanguard's entries of its FriTech product during the alleged

evasion period.  *Id.*; Allegation at 107-113 (P.R. 2).  The application for Patent 1 indicated that the artificial stone was comprised, by mass, of 60-80 parts fritted sand and 10-30 parts quartz powder.  R&R Review at 13; Allegation at 112 (P.R. 2).  CBP reasoned that because quartz powder is pure silica, whether the "silica content is greater than any other single material, by actual weight" and therefore within the scope of the Orders, depends on the chemical composition of fritted sand.  R&R Review at 13 (quoting 84 Fed. Reg. at 33,055-56).  The application for Patent I indicated that fritted sand is comprised of 60-80 percent of silica.  *Id.*; Allegation at 112 (P.R. 2).  Accordingly, CBP reasoned that even taking the most conservative approach with respect to silica content—*i.e.*, a minimum quartz powder content of 10 parts with 99 percent silica along with fritted sand made up of 60 percent silica—silica would still comprise more than half of the content, by weight, of the product.  R&R Review at 14.

CBP also reviewed an international patent issued by the World Intellectual Property Organization (WIPO), that Vanguard included in its CF-28 response for Entry 9748, another of Vanguard's entries of its FriTech product during the alleged evasion period, for a second brand of artificial stone described as "Artificial Agglomerate Stone Article comprising Synthetic Silicate Granulates" (Patent 2).  CF-28 Response re: Entry 9748 at 14 (C.R. 7).  Patent 2 explains that Vanguard's product "is concerned with synthetic silicate granules" comprising 52.50-59.80 percent silica by weight (or 56.90-59.80 percent silica by weight in its "preferred embodiment").  *Id.* at 18.  Patent 2 therefore also demonstrated that this brand of product's silica content was greater than any other material in the product by weight.

Vanguard argues that the patents should have been given no weight because they are "theoretical," Pl.'s Br. at 16, and that, instead, a lab test Vanguard submitted to CBP purporting to demonstrate that the imported merchandise is not predominantly silica is better evidence that

the merchandise is not within the scope of the Orders.  But Vanguard's suggestion that the

formulation of the merchandise "could have changed {from what is described in the patents} to

ensure that the goods were outside the scope of the order," Pl.'s Br. at 17, is speculation and

Vanguard can point to no evidence in the record that these patents—the patents referenced in the

materials Vanguard itself submitted in response to CF-28s about the specific subject entries—did

not properly describe the merchandise's formulation.

In addition, R&R properly affirmed TRLED's determination that the lab test submitted

by Vanguard was not reliable.  R&R Review at 15-16.  To begin with, Vanguard's submission of

this lab report followed repeated refusals on the part of Vanguard and its suppliers to cooperate

with CBP's investigation, such that TRLED was justified in applying adverse inferences.  *See* 19

U.S.C. § 1517(c)(3)(a) (permitting CBP to apply adverse inferences and select from facts

otherwise available when party fails to act "to the best" of its ability to comply with requests for

information).  Here, after initiating the investigation, TRLED issued RFI questionnaires to

Vanguard and several of its Chinese suppliers asking for a wide range of pertinent information

about the covered merchandise.[3]  No RFI recipient provided the information requested and only

two—Vanguard and "Chinese Supplier3"—even responded.  Vanguard provided a rote response

to almost every question, indicating that it "did not import any covered merchandise into the U.S.

since July 21, 2021," and that because "[t]hese questions are directed to the role of the company

---

[3] The RFI questionnaires asked for the following information: "(1) identification of the producers of the merchandise at issue; (2) a list and description of the significant inputs used to manufacture the merchandise at issue; (3) raw material purchases; (4) production capabilities; (5) inventories; (6) monthly inventory movement schedules for the top three direct material inputs; (7) Vanguard's relationships with Chinese suppliers of the merchandise at issue; (8) an explanation of Vanguard's sales process; (9) product brochures and other marketing materials; and (10) an explanation of the range of products, the types of products sold, and the associated product codes."  R&R Review at 10; Vanguard RFI Questionnaire (C.R. 10); Supplier RFI Questionnaires (C.R. 11, 12, 13, 14).

in manufacture, sale, and distribution of the covered merchandise," they did "not apply, and no further answer is being provided." TRLED Determination at 13; Vanguard RFI Response at 3-16 (C.R. 16). "Chinese Supplier3" provided a verbatim response. R&R Review at 11; Chinese Supplier RFI Response at 2-20 (C.R. 20). TRLED issued a Supplemental RFI to Vanguard to which Vanguard again refused to fully respond, stating that the Supplemental RFI is "irrelevant and thus is not needed for CBP for any purpose" because the EAPA determination "turns on one point: whether the goods are in scope or are not in scope." TRLED Determination at 11; Vanguard Response to Supplemental RFI Questionnaire at 3 (P.R. 32).

Only later did Vanguard submit the lab test results to CBP as part of its Feb. 27, 2023 VFI. VFI at 7-12 (C.R. 19). As a preliminary matter, the lab test submitted by Vanguard in its VFI is different from the two CBP lab tests Vanguard attacks in its opening brief. Pl.'s Br. at 13-14. But, as R&R properly noted, "CBP did not rely on its lab tests . . . to reach a determination of evasion," R&R Review at 18, making Vanguard's arguments about the CBP lab tests immaterial (and meaning the CBP lab tests do not implicate *Royal Brush Mfrg., Inc. v. United States*, 75 F.4th 1250 (Fed. Cir. 2023)).

The lab test Vanguard submitted in its VFI purported to demonstrate that the imported merchandise was only 29.7 percent silica and therefore not within the scope of the Orders. VFI at 9 (C.R. 19); Pl.'s Br. at 15. TRLED reviewed the submission and found it to be "unreliable because the product sampled appears to be different from the product subject to this EAPA investigation" and did not match the product content listed in the patent descriptions of the content of the goods enclosed with Vanguard's CF-28 responses. TRLED Determination at 20. TRLED also observed that the product number referred to in the test report was not included in the FriTech product brochure that Vanguard submitted in response to CBP's CF-28 requests

identifying the subject merchandise.  *Id*. at 15; R&R Review at 15.  Furthermore, TRLED noted that "[b]ecause . . . {Vanguard} did not provide responses to CBP's RFI questionnaires, CBP has no way of corroborating that the tested merchandise included in the report is the same" as the merchandise imported by Vanguard during the EAPA period of investigation.  TRLED Determination at 20.

The evidence supports CBP's determination of unreliability.  The only identifying information about the sample tested as part of Vanguard's lab test is a "Sample Name" and "Sample Number."  VFI at 9 (C.R. 19).  Nothing in either the lab test report or Vanguard's cover letter corroborates that the product identified in the lab report was the same product as the covered merchandise.  Nor is an explanation given for the divergence between the findings in the lab test report and the product composition as reported in the patents.  And Vanguard's refusal to cooperate with CBP during the EAPA investigation, including refusing to provide substantive responses to CBP's RFI questionnaires, is exactly the type of lack of cooperation that entitles CBP to "use an inference that is adverse" and "selec[t] from among the facts otherwise available to make the determination." 19 U.S.C. § 1517(c)(3)(a).  Here, the other facts available were the product information in the patent applications, which indicated that the imported merchandise was within the scope of the Orders—the same conclusion ultimately reached by Commerce as to scope.

### III.    Vanguard's Challenges to R&R's Affirmance of TRLED's Evasion Determination Are Not Persuasive

a.    Vanguard's Statements and Omissions Properly Formed Basis for Finding of Evasion.

Vanguard's argument that this case improperly "punish[es] importers with legitimate disputes as to classification," Pl.'s Br. at 8, conflates a general argument about the purpose of

EAPA and the types of misstatements and omissions that can qualify for evasion with a specific factual disagreement as to CBP's findings in this case.  By its plain terms, EAPA establishes that evasion occurs when merchandise is entered into the United States by a false statement or omission, made by means of "any document or electronically transmitted data or information," that results in AD/CVD duties being not applied or reduced to covered merchandise.  19 U.S.C. § 1517(a)(5)(A).  Nothing in EAPA's text or history, or in case law, suggests that false statements or omissions made on entry paperwork regarding the description or classification of entered merchandise, or regarding the type of entry (*i.e.*, type 01 consumption vs. type 03 AD/CVD) could not meet the definition of evasion, so long as such a statement or omission was material and false.

Such a statement or omission is material if it causes AD/CVD to be "reduced or not . . . applied with respect to the merchandise."  19 U.S.C. § 1517(a)(5)(A).  It follows that an incorrect description of merchandise, or a failure to indicate that entered merchandise is subject to an AD/CVD order, would cause such a result.  Absent such an indication on the entry paperwork, CBP would not be prompted to look more closely at the entry to determine whether, and, if so, what value of, AD/CVD duties should be applied to the entered merchandise.  That is exactly what R&R determined happened in this case.  R&R Review at 16 (explaining that applicable cash deposits and antidumping and countervailing duties were not paid because Vanguard entered the merchandise as type 01 consumption entries instead of type 03 AD/CVD entries).  Accordingly, to the extent Vanguard argues that EAPA does not contemplate a finding of evasion based on classification of goods or indications of entry type, that argument fails as a matter of law.

Vanguard's argument collapses into merely its assertion that the information provided on

the entry paperwork was not false.  Pl.'s Br. 8-9.  But, as discussed above, the record contains

substantial evidence that it was (a conclusion confirmed by Commerce's own scope

determination).  Furthermore, the fact that EAPA excludes "clerical errors" as the basis for a

finding of evasion is irrelevant.  Pl.'s Br. at 8.  There is no evidence in the record, and Vanguard

in its briefing does not suggest, that Vanguard meant to enter the goods as type 03 AD/CVD, but,

due to a clerical error, entered them as type 01 consumption entries.  To the contrary, Vanguard

maintains that it was correct to enter the merchandise as type 01 entries.  Therefore, EAPA's

safe-haven for "clerical errors"—meant to protect importers from facing EAPA liability based on

mistake—does not apply.  Nor does the "reasonable care" standard invoked by Vanguard, Pl.'s

Br. at 8, somehow refute the substantial evidence of falsity on the record.  To the contrary, it

would frustrate the purpose of EAPA to permit an importer to refuse to cooperate during an

EAPA investigation as Vanguard did here but then hide behind a claim that it acted with

"reasonable care" in submitting its entry paperwork.  Far from a case of a "legitimate disput{e}

as to . . . classification{}," Pl.'s Br. at 8, the record demonstrates this case is exactly of the type

EAPA was designed to catch:  false statements and omissions on entry paperwork that led to the

evasion of AD/CVD duties.

> b.  **CBP Was Neither Required To Make A Referral To Commerce Nor Pause Its
>     Investigation Once Vanguard Submitted A Scope Request.**

Contrary to Vanguard's suggestion, Pl.'s Br. at 9-12, CBP was not required to refer this

matter to Commerce.  EAPA provides that CBP "shall refer" the matter to Commerce for a scope

review, "[i]f the Commissioner [of CBP] . . . is *unable* to determine whether the merchandise at

issue is covered merchandise."  19 U.S.C. § 1517(b)(4)(A) (emphasis added).  Such a rule is

consistent with CBP's "statutory responsibility to fix the amount of duty owed on imported

goods," under which it "is both empowered and obligated to determine in the first instance

whether goods are subject to existing antidumping or countervailing duty orders." *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1317 (Fed. Cir. 2020). Indeed, "[w]hile Customs may not expand or alter the scope of such orders, its authority and responsibility to determine whether they apply does not dissipate simply because an order lacks perfect clarity." *Id*.

Here, CBP was well-equipped to give a "yes-or-no answer" to whether the Orders applied without "invad[ing] the interpretive province of Commerce." *Id.* While the Orders provide numerous examples of types and varieties of stone that are within scope, it makes clear that a fundamental prerequisite for in-scope products is that their "silica content is greater than any other material, by actual weight." 84 Fed. Reg. at 33,055-56. Far from presenting a thorny interpretive question for CBP that would require Commerce to step in and provide clarification, the Orders establish a straightforward guideline for CBP to apply based on facts CBP collects. As discussed in detail above, CBP conducted an investigation and made a factual determination that the imported merchandise was predominantly silica and therefore within the scope of the Orders. Accordingly, CBP was under no obligation to refer this matter to Commerce.

Vanguard's reference to CBP's responses to comments in its notice implementing EAPA regulations does not change the analysis. Pl.'s Br. at 11-12. The CBP response Vanguard cites is explicit that CBP "refers cases to Commerce regarding the scope of an AD/CVD order *when appropriate*." Pl.'s Br. at 11 (citing 89 Fed. Reg. 19239 at 19246) (emphasis added). But, as described above, such a referral was not "appropriate" in this case because CBP was well positioned to apply the Orders to the facts, and nothing in EAPA or its regulations requires CBP to discuss a matter with Commerce in such a situation. Nor do EAPA regulations require CBP to suspend an investigation if an importer requests a scope ruling; rather, only if *CBP* requests a scope review from Commerce are deadlines in the EAPA proceeding stayed. *See* 19 C.F.R.

165.16(d).

Finally, even if CBP had referred the matter to Commerce, Commerce would have reached the same conclusion as CBP—which is exactly what Commerce did in its January 25, 2024, final scope determination.  Vanguard fails to show how a referral to Commerce would alter CBP's evasion determination.

      c.  What Commerce "would have" done is irrelevant in light of Commerce's actual scope determination.

Vanguard speculates on what Commerce "would have" done if CBP had referred the matter for a scope ruling and determines that Commerce would have agreed with Vanguard that the entered merchandise was outside the scope of the Orders.  Pl.'s Br. at 18.  Such speculation is purely a misleading academic exercise given that we know what Commerce *would have* decided because Commerce *actually did* decide that Vanguard's FriTech product is within the scope of the Orders. [4]  And Vanguard's accusation that CBP's "simplistic interpretation" was one that "required Commerce's input to consider these complex issues," Pl.'s Br. at 20, is unconvincing because Commerce reached the same conclusion as CBP.  To the extent Vanguard disagreed with that scope ruling, it could have sought review in this Court under 28 U.S.C. § 1581(c).  It

---

[4] The exercise itself is based on Vanguard's unsupported supposition that "[i]n considering scope, Commerce would have considered whether a molecule which contains a Silica component retains its 'silica' status, or whether this molecule where Silica is bonded, at the atomic level, loses its Silica nature."  Pl.'s Br. at 18.  But the question for scope is merely whether a material's silica content is greater, by weight, than any other material, which presupposes that covered materials can include silica bonded together with other chemicals.  For example, whereas quartz is essentially pure silica (i.e., 100% $SiO_2$ by weight) other silicate minerals, like feldspar, incorporate elements such as aluminum, potassium, sodium, and calcium, in various combinations, with silica.  *See, e.g.*, PHYSICAL GEOLOGY, Chapter 2.4: Silicate Minerals, available at https://opentextbc.ca/physicalgeology2ed/chapter/2-4-silicate-minerals/ ("In addition to silica tetrahedra, feldspars include the cations aluminum, potassium, sodium, and calcium in various combinations.").  Indeed, Patent 1 indicates that while the fritted sand used in Vanguard's product is predominantly silica, it also includes MgO and $Al_2O_3$.  R&R Review at 14; Allegation at 112 (P.R. 2).

cannot create hypotheticals about what Commerce "would have" done as a means to attack CBP's decision here (or try and use this case as a forum for relitigating Commerce's scope determination).

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain the R&R Review as supported by the record, not arbitrary and capricious, and otherwise in accordance with the law.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

JUSTIN R. MILLER
Attorney-in-Charge
International Trade Field Office

By:  <u>/s/ Aimee Lee</u>
     AIMEE LEE
     Assistant Director

Of Counsel:                          <u>/s/ Nico Gurian</u>
                                     NICO GURIAN
Chelsea A. Reyes                     Trial Attorney
Nicolas Morales                      Department of Justice, Civil Division
Office of Chief Counsel              Commercial Litigation Branch
U.S. Customs and Border Protection   26 Federal Plaza, Suite 346
                                     New York, New York 10278
                                     (212) 264-0484

                                     *Attorneys for Defendant*

Dated:  October 28, 2024

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this response brief contains 5,170 words, excluding any materials excluded from those Procedures' requirements, as calculated by the word processing system used to prepare this brief (Microsoft Word).

<u>/s/ Nico Gurian</u>