Slip Op. 25-61

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **VANGUARD TRADING COMPANY LLC,** | |
| Plaintiff, | **Before: Timothy M. Reif, Judge** |
| v. | **Court No. 23-00253** |
| **UNITED STATES,** | **PUBLIC VERSION** |
| Defendant. | |

### <u>OPINION</u>

[Denying plaintiff's motion for judgment on the agency record and sustaining the finding of evasion of U.S. Customs and Border Protection.]

Dated: May 19, 2025

<u>David J. Craven</u>, Craven Trade Law LLC, of Chicago, IL, and <u>Beixiao Robert Liu</u>, Balance Law Firm, of New York, N.Y., argued for plaintiff Vanguard Trading Company LLC.

<u>Nico Gurian</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of New York, N.Y., argued for defendant United States. With him on the brief were <u>Brian M. Boynton</u>, Principal Deputy Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, <u>Aimee Lee</u>, Assistant Director and <u>Justin R. Miller</u>, Attorney-in-Charge, International Trade Field Office. Of counsel on the brief were <u>Chelsea A. Reyes</u> and <u>Nicolas Morales</u>, Office of Chief Counsel, U.S. Customs and Border Protection, of Washington, D.C.

Reif, Judge: Before the court is the motion for judgment on the agency record of

plaintiff Vanguard Trading Company LLC ("plaintiff"). Mem. of Law in Supp. of Rule 56.2

Mot. of Pl. for J. upon Agency R. ("Pl. Br."), ECF No. 30-1. Plaintiff challenges the final

determination and administrative review determination of U.S. Customs and Border

Protection ("Customs") that plaintiff was evading the antidumping ("AD") and

Court No. 23-00253                                                                    Page 2

countervailing duty ("CVD") orders on quartz surface products ("QSP") from China.  *Id.*;

Compl. ¶ 1, ECF No. 2; *see also* TRLED - Final Determination Notice, EAPA Case No.

7722 (June 14, 2023) ("Final Determination"), APPX005566-APPX005586.  Plaintiff

argues that certain aspects of Customs' conclusion that plaintiff was evading the AD and

CVD orders are unsupported by substantial evidence, arbitrary and capricious or

otherwise not in accordance with law.  Pl. Br. at 3-4.

    For the reasons that follow, the court denies plaintiff's motion.

## BACKGROUND

    On July 11, 2019, the U.S. Department of Commerce ("Commerce") issued the

AD and CVD orders on QSP from China.  *Certain Quartz Surface Products from the*

*People's Republic of China: Antidumping and Countervailing Duty Orders* ("*Orders*"), 84

Fed. Reg. 33,053 (Dep't of Commerce July 11, 2019).

    The scope of the *Orders* described the merchandise covered by the investigation

as "certain quartz surface products" that "consist of slabs and other surfaces created

from a mixture of materials that includes predominately silica (e.g., quartz, quartz

powder, cristobalite) as well as a resin binder (e.g., an unsaturated polyester)."  *Id.* at

33,055.  The *Orders* specified that "the scope of the orders only includes products

where the silica content is greater than any other single material, by actual weight."  *Id.*

    On July 11, 2022, Cambria Company LLC ("Cambria"), a U.S. domestic producer

of QSP, filed with Customs an allegation that certain entities — including plaintiff —

were evading the *Orders* on QSP from China and that such importations were being

shipped directly from China.  Compl. ¶ 7; *Quartz Surface Products from the People's*

*Republic of China*: Request for an Investigation under the Enforce and Protect Act of

Vanguard Trading Co., EAPA Case No. 7722 (July 11, 2022) ("Allegations of Evasion"),

APPX001001-APPX001014.  Cambria alleged specifically that plaintiff was importing a

"countertop material . . . called 'Fri-Tech'" that "meets the definition of QSP in the

AD/CVD orders."  *Id.* at 9.  Cambria attached to its request for an investigation

information related to the Fri-Tech product, including an application for a U.S. patent on

the product ("Fri-Tech Patent").  *Id.*, Ex. 17 (U.S. Patent Application US 2020/0299188

A1 (Sept. 24, 2020)).

     The Enforce and Protect Act ("EAPA"), section 517 of the Tariff Act of 1930, as

amended, 19 U.S.C. § 1517,[1] enacted as Title IV, section 421 of the Trade Facilitation

and Trade Enforcement Act of 2015, directs Customs to investigate agency referrals or

interested party allegations that "reasonably suggest[] that covered merchandise has

been entered into the customs territory of the United States through evasion."[2]  19

U.S.C. § 1517(b)(1).  If Customs reaches a finding of evasion, Customs will suspend

liquidation of unliquidated entries "that enter on or after the date of the initiation of the

investigation."  *Id.* § 1517(d)(1)(A)(i).

     On August 11, 2022, Customs determined that Cambria's allegation "reasonably

suggest[ed] that covered merchandise has entered into the customs territory of the

United States by means of evasion," and therefore initiated an investigation under EAPA

to determine whether plaintiff had evaded the *Orders* on QSP from China.  TRLED -

Initiation Memo, EAPA Case No. 7722 (Aug. 11, 2022) ("Initiation Memo") at 1,

---

[1] Further citations to the Tariff Act of 1930, as amended, are to the relevant portions of
Title 19 of the U.S. Code, 2018 edition.

[2] "Covered merchandise" refers to merchandise that is subject to an AD or CVD order.
19 U.S.C. § 1517(a)(3).

APPX005000-APPX005004; *see* 19 U.S.C. § 1517(b)(1).  In the initiation memorandum, Customs explained that based on Cambria's allegation, plaintiff "may have engaged in attempts to evade the Orders by misclassifying and by failing to declare merchandise as subject to the Orders" such that plaintiff "evaded the AD/CVD Orders by" importing the merchandise as "artificial marble and/or artificial stone" when the merchandise is in fact QSP.  *Id.* at 3; Final Determination at APPX005568.  Customs designated the investigation EAPA Case No. 7722.  Initiation Memo at 1.

Plaintiff is an importer of mineral-based surface products produced in China and subject to Customs' evasion investigation.  Compl. ¶ 3.  Prior to the initiation of the EAPA investigation, plaintiff imported its slabs as "type 1 entries not subject to" the *Orders* because, according to plaintiff, the "slabs were not made from quartz and . . . independent lab tests obtained by [plaintiff] confirmed that silica was not the predominate material."  Pl. Br. at 6.; *see* Allegations of Evasion, Ex. 12 (Shipments to Vanguard Trading Co.).

In response to the allegation of evasion, on August 29 and August 30, 2022, Customs' Trade Remedy & Law Enforcement Directorate ("TRLED") issued CF-28 requests for information to plaintiff for two entries, Entry 7687 and Entry 9748.  CF28 Response – Entry 7687 (Aug. 29, 2022) ("Entry 7687 CF-28 Response"), APPX005005-APPX005052; CF 28 Response – Entry 9748 (Aug. 30, 2022) ("Entry 9748 CF-28 Response"), APPX005053-005185.  The CF-28 requests sought "technical literature, diagrams, photographs, brochures, and/or other pertinent information," along with "a manufacturer's affidavit with the description of the product and the manufacturing process."  Entry 7687 CF-28 Response at 2; Entry 9748 CF-28 Response at 2.  The CF-

**PUBLIC VERSION**

28 requests asked moreover that plaintiff "[e]xplain why the product being imported is not subject to the" *Orders*.  Entry 7687 CF-28 Response at 2; Entry 9748 CF-28 Response at 2.  In response to the CF-28 request for Entry 7687, plaintiff provided, inter alia, an informational packet that mentioned the Fri-Tech Patent that Cambria attached to its request for an investigation.  Entry 7687 CF-28 Response at APPX005022.  In response to the CF-28 request for Entry 9748, plaintiff provided, inter alia, a patent application filed with the World Intellectual Property Organization ("WIPO Patent").  Entry 9748 CF-28 Response at APPX005066.  However, plaintiff did not provide the requested manufacturer affidavit for either entry, and, as a result, TRLED concluded that it was unable to determine the actual manufacturer of the products being imported.  Final Determination at APPX005573.

Then, on November 9, 2022, TRLED determined that there was a reasonable suspicion of evasion of the *Orders* by plaintiff.  CBP Email Notification of NOI, EAPA Case No. 7722 (Nov. 9, 2022), APPX005186-APPX005188.  As a result, TRLED requested that Customs' Industrial & Manufacturing Materials Center ("IMM Center") implement certain "interim measures" under § 1517(e).[3]  *Id.* at APPX005187.  Those interim measures included that the IMM Center suspend liquidation of unliquidated

---

[3] 19 U.S.C. § 1517(e) requires that Customs decide no later than 90 days after initiation "if there is a reasonable suspicion that . . . covered merchandise was entered into the customs territory of the United States through evasion."  If Customs determines that there is reasonable suspicion of evasion, the statute requires that Customs: (1) "suspend liquidation" of unliquidated entries entered on or after the date of initiation; (2) "extend the period for liquidating each unliquidated entry of . . . covered merchandise that entered before the date of the initiation"; and (3) "take such additional measures as the Commissioner determines necessary to protect the revenue of the United States, including requiring a single transaction bond or additional security or the posting of a cash deposit with respect to such covered merchandise."  *Id.* § 1517(e)(1)-(3).

**PUBLIC VERSION**

entries entered on or after the date of initiation. *Id.* On November 17, 2022, TRLED

notified Cambria and plaintiff that Customs had commenced a formal EAPA

investigation regarding plaintiff and that the interim measures had been implemented.

Notice of Initiation of Investigation and Interim Measures, EAPA Case No. 7722 (Nov.

17, 2022) at 1, APPX005190-APPX005199.

In December 2022 and January 2023, TRLED issued Requests for Information

("RFI") questionnaires to plaintiff and each of its Chinese suppliers concerning the

merchandise that plaintiff was importing. Importer RFI Questionnaire, EAPA Case No.

7722 (Dec. 2, 2022), APPX005200-APPX00005227; Mfg. RFI Questionnaire, EAPA

Case No. 7722 (Dec. 2, 2022), APPX005228-APPX005258; Mfg. 2 RFI Questionnaire,

EAPA Case No. 7722 (Jan. 18, 2023), APPX005259-APPX005307; Mfg. 3 RFI

Questionnaire, EAPA Case No. 7722 (Jan. 18, 2023), APPX005308-APPX005355; Mfg.

4 RFI Questionnaire, EAPA Case No. 7722 (Jan. 18, 2023), APPX005356-

APPX005403. However, Customs received a response from only one of plaintiff's

Chinese suppliers. *See* Relang – RFI Response Narrative, EAPA Case No. 7722 (Mar.

6, 2023) ("Mfg. RFI Response"), APPX005537-APPX005557.

On January 19, 2023, plaintiff filed its response to TRLED's request for

information. VTC – RFI Response Narrative (Jan. 19, 2023) ("Pl. RFI Response"),

APPX005438-APPX005454. In that response, plaintiff stated that TRLED was "seeking

information that is not germane to the investigation in question," but that plaintiff would

"provid[e] full and complete information" "in the spirit of cooperation." *Id.* at 1. However,

plaintiff was not responsive to a number of the questions contained in the RFI. For

example, in response to TRLED's request for a "full narrative history" of the company,

plaintiff responded only:

> As discussed further herein, VTC did not import any covered merchandise into the U.S. since July 21, 2021.  These questions are directed to the role of the company in the manufacture, sale and distribution of the covered merchandise.  Accordingly, this question does not apply and no further answer is being provided.

*Id.* at 3.

Similarly, the single Chinese supplier that responded to Customs' RFI responded

to each question in the same rote fashion, stating only that the supplier "did not export

any covered merchandise to the U.S.," so the "question does not apply and no further

answer is being provided."  *See* Mfg. RFI Response.

After Customs received plaintiff's RFI response, Customs determined that

"additional information [was] necessary."  Supplemental Request for Information, EAPA

Case No. 7722 (Feb. 6, 2023) at 1, APPX005455-APPX005499.  As a result, on

February 6, 2023, Customs issued to plaintiff a supplemental RFI.  *Id.*  On February 13,

2023, plaintiff submitted its response to the supplemental RFI.  Final Determination at

APPX005578.  In its supplemental response, plaintiff took the position that "most of the

requests . . . [are] irrelevant and provide no useful information with respect to the EAPA

determination."  *Id.* (alteration in original).  Plaintiff stated also that "[t]here is no issue as

to a false declaration of origin" because "the goods were produced in China and were

claimed to have been a product of China at the time of entry."  *Id.*  Plaintiff concluded

that because "[t]he sole 'circumvention' turns on the question as to the classification of

the goods and whether they fall within the scope of the order . . . any request seeking

information unrelated to the nature of the goods is overbroad and unnecessary."  *Id.*

**PUBLIC VERSION**

Court No. 23-00253                                                                                   Page 8

On February 27, 2023, plaintiff filed voluntarily a Request for Action and

Voluntary Submission of Factual Information ("VFI").  Request for Action and Voluntary

Submission of Factual Information, EAPA Case No. 7722 (Feb. 27, 2023) ("Pl. VFI") at

1, APPX005500-APPX005536.  In that submission, plaintiff included a lab report that

plaintiff claimed demonstrated that its product was not "chief weight silica," and

therefore outside the scope of the *Orders*.  *See id.*, Ex. A.  Also in the VFI, and in

plaintiff's subsequent written arguments to Customs, plaintiff argued that the EAPA

statute required that Customs consult with Commerce to ascertain whether plaintiff's

merchandise was within the scope of the *Orders*.  *Id.* at 2; Resubmission with

Redactions Written Arguments, EAPA Case No. 7722 (Apr. 17, 2023), APPX005558-

APPX005565.

On May 12, 2023, plaintiff filed with Commerce a scope ruling request, in which

plaintiff asked that Commerce determine whether plaintiff's Fri-Tech product is covered

by the scope of the *Orders*.  Def. Br., Ex. 1 ("Commerce Scope Ruling") at 1.  According

to plaintiff, Customs refused to allow any details about the scope ruling to be placed on

the record and rejected plaintiff's attempts to provide such information.  Pl. Br. at 5-6

(citing CBP Rejection Email, EAPA Case No. 7722 (May 11, 2023), APPX001169-

APPX001170).

On June 14, 2023, Customs issued the notice of determination of evasion.  *See*

Final Determination.  Customs determined that "there is substantial evidence that the

Importer misclassified the subject Chinese-origin QSP by describing the merchandise

as 'artificial marble and/or artificial stone' when that merchandise should properly be

described as QSP."  *Id.* at APPX005567.  Customs reached this conclusion based on

two independent findings. First, Customs determined that "none of the parties to the investigation respond [sic] to the RFIs to the best of their abilities" because three of the suppliers "did not respond at all" and plaintiff and one Chinese supplier "did not provide any of the detailed information requested by CBP." *Id.* at APPX005584. Customs continued that "[a]ll parties to the investigation failed to provide documentary evidence that would substantiate and/or corroborate the Importer's reported imports of artificial marble and artificial stone as not being subject to the *AD/CVD Orders*." *Id.* As a result, Customs determined to apply an adverse inference under 19 U.S.C. § 1517(c)(3)(A) in selecting from the facts otherwise available. *Id.* Customs then found "[i]n selecting from among the facts otherwise available," that plaintiff "entered Chinese-origin QSP that was misclassified." *Id.*

Second, Customs concluded that, "[e]ven setting aside the non-cooperation, the record contains substantial evidence that the goods are covered by the scope of the *AD/CVD Orders*." *Id.* at APPX005583. In reaching that determination, Customs relied on two patents for plaintiff's product — the WIPO Patent and the Fri-Tech Patent — as well as certain online information and brochures, to conclude that plaintiff's merchandise was "predominately silica by weight." *Id.* at APPX005573-APPX005575, APPX005581.

With respect to the lab report that plaintiff placed on the record, Customs stated that the lab report was "unreliable because the product sampled appears to be different from the product subject to this EAPA investigation." *Id.* at APPX005585. Customs asserted also that because plaintiff "did not provide responses to CBP's RFI questionnaires, CBP has no way of corroborating that the tested merchandise included in the report is the same as the merchandise imported by [plaintiff] during the period of

**PUBLIC VERSION**

investigation under HTS 6810.99.0080." *Id.* Customs explained that "the content of the tested material . . . does not match the patent descriptions of the content of the goods, as provided in the CF-28 responses." *Id.*

As a consequence, Customs suspended or continued to suspend the liquidation of plaintiff's entries, rate-adjusted any previously extended entries to type 03 (AD/CVD), and continued to require single transaction bonds as appropriate. *Id.* at APPX005586; 19 U.S.C. § 1517(d) (describing the effect of a determination of evasion).

On July 6, 2023, plaintiff attempted to submit to the record of the investigation the Federal Register notice of plaintiff's scope ruling application to Commerce. Office of Regulation and Rulings Administrative Review ("R&R Review"), EAPA Case No. 7722 (Oct. 23, 2023) at 7, APPX001192-APPX001212. However, TRLED rejected plaintiff's submission as untimely and did not include the submission as part of the record of the investigation. *Id.*

Plaintiff requested that Customs' Office of Regulations & Rulings ("R&R") conduct a de novo administrative review of the Final Determination.[4] R&R Review at 1. On October 23, 2023, R&R affirmed TRLED's determination of evasion, finding that there was substantial evidence on the record to support a finding of evasion. R&R Review at 19.

On December 4, 2023, plaintiff filed its complaint to challenge Customs' finding of evasion. Compl. Then, on January 25, 2024, Commerce issued a final scope ruling in

---

[4] 19 U.S.C. § 1517(f)(1) allows "a person determined to have entered . . . covered merchandise through evasion" to file no later than 30 days after the determination of evasion "an appeal with the Commissioner for a de novo review of" the Customs final determination of evasion.

**PUBLIC VERSION**

Court No. 23-00253                                                                                    Page 11

response to plaintiff's request and determined that plaintiff's Fri-Tech surface product is

within the scope of the *Orders*.  Commerce Scope Ruling.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19

U.S.C. § 1517(g)(1).

A person determined to have entered into the United States covered

merchandise through evasion and an interested party that filed an allegation of evasion

that resulted in initiation of an evasion investigation may seek judicial review in this

Court to assess whether the determination of evasion and subsequent R&R review

process are conducted in accordance with 19 U.S.C. § 1517(c) (determinations) and (f)

(R&R reviews).  19 U.S.C. § 1517(g)(1).

The Court reviews determinations and reviews in evasion investigations to

examine: (1) whether Customs "fully complied with all procedures under subsections (c)

and (f)"; and (2) whether "any determination, finding, or conclusion is arbitrary,

capricious, an abuse of discretion, or otherwise not in accordance with law."  *Id*. §

1517(g)(2)(A)-(B).

An agency action is arbitrary and capricious "if the agency has relied on factors

which Congress has not intended it to consider, entirely failed to consider an important

aspect of the problem, offered an explanation for its decision that runs counter to the

evidence before the agency, or is so implausible that it could not be ascribed to a

difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n of

U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  "The scope of

review under the 'arbitrary and capricious' standard is narrow and a court is not to

Court No. 23-00253                                                                    Page 12

substitute its judgment for that of the agency." *Id*. But still, the agency "must examine

the relevant data and articulate a satisfactory explanation for its action[,] including a

'rational connection between the facts found and the choice made.'" *Leco Supply, Inc.*

*v. United States*, 47 CIT __, __, 619 F. Supp. 3d 1287, 1293 (2023) (alteration in

original) (quoting *State Farm*, 463 U.S. at 43).

      "An abuse of discretion occurs where the decision is based on an erroneous

interpretation of the law, on factual findings that are not supported by substantial

evidence, or represents an unreasonable judgment in weighing relevant factors." *Star*

*Fruits S.N.C. v. United States*, 393 F.3d 1277, 1281 (Fed. Cir. 2005) (citing *Arnold P'ship*

*v. Dudas*, 362 F.3d 1338, 1340 (Fed. Cir. 2004)).

## DISCUSSION

## I.   Whether Customs' EAPA determination is in accordance with law

      Plaintiff argues that Customs' finding of evasion is not in accordance with law,

raising three separate theories. First, plaintiff argues that the EAPA statute does not

permit a finding of evasion where there is a "legitimate dispute as to classification." Pl.

Br. at 1. Second, plaintiff asserts that the statute required that Customs make a

covered merchandise referral to Commerce, and that, had Customs made such a

referral, Commerce "would have" found that plaintiff's merchandise was outside the

scope of the *Orders*. *Id*. at 1, 5. Third, plaintiff alleges that once Commerce initiated its

scope inquiry based on plaintiff's scope ruling request, the statute required that

Customs stay the EAPA investigation pending the results of Commerce's scope ruling.

Reply of Pl. to Def.'s Resp. to Rule 56.2 Mot. of Pl. for J. upon the Agency R. ("Pl. Reply

Br.") at 8-9, ECF No. 35. The court considers each argument in turn.

**A.    Whether alleged misclassification upon entry may support a finding of evasion**

**1.    Legal framework**

19 U.S.C. § 1517(a)(5)(A) defines "evasion" as:

> entering covered merchandise into the customs territory of the United States by means of any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material, and that results in any cash deposit or other security or any amount of applicable antidumping or countervailing duties being reduced or not being applied with respect to the merchandise.

In explaining the regulation in existence at the time of the instant EAPA

investigation, Customs stated:

> Examples of evasion include, but are not limited to, the misrepresentation of the merchandise's true country of origin (e.g., through fraudulent country of origin markings on the product itself or false sales), false or incorrect shipping and entry documentation, or misreporting of the merchandise's physical characteristics.

*Investigation of Claims of Evasion of Antidumping and Countervailing Duties*, 81 Fed.

Reg. 56,477, 56,478 (CBP Aug. 22, 2016).

Customs' current regulations state that "[e]xamples of evasion include, but are

not limited to, the transshipment, misclassification, and/or undervaluation of covered

merchandise."  19 C.F.R. § 165.1.

**2.    Analysis**

The court addresses first whether Customs could reach a determination of

evasion in the instant case — namely, where the alleged "false statements or

omissions" concerned the classification of merchandise upon entry.

Plaintiff's principal argument in opposition to Customs' evasion determination is

that EAPA "cannot be properly invoked" as to plaintiff's entries because — according to

plaintiff — it did not make a material and false statement in its entry paperwork but rather classified its merchandise based on its good faith belief that its merchandise was not within the scope of the *Orders*.  Pl. Br. at 3.  Plaintiff insists that the primary purpose of EAPA "was to prevent the evasion of Antidumping and Countervailing Duties and not to punish importers with legitimate disputes as to the classification of goods at the time of entry."  *Id.* at 8.  Plaintiff asserts that Customs "appears to ignore [the] underlying principle of Customs Law" that "importers are not required to reach a standard of perfection, only a standard of reasonable care in their decisions about making entry." *Id.* (citing *United States v. Optrex Am., Inc.*, 32 CIT 620, 629-630, 560 F. Supp. 2d 1326, 1335 (2008)).

Plaintiff maintains that it did not make material and false statements but instead "fully and properly described [the goods] on the entry paperwork and related documents as 'artificial marble,'" which plaintiff states was "fully and completely accurate."  *Id.* Plaintiff continues that "[t]here was never a dispute as to the manufacturer[,] . . . the exporter . . . [or] Country of Origin."  Pl. Reply Br. at 8.

The court concludes that false statements or omissions concerning the classification of merchandise may support a finding of evasion under § 1517.

"Courts must exercise their independent judgment in deciding whether an agency has acted within its statutory authority."  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024).  In exercising its independent judgment, the court determines the "best reading of the statute," which is "'the reading the court would have reached' if no agency were involved."  *Id.* at 400 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.11 (1984)).

**PUBLIC VERSION**

The definition of "evasion" is clear and includes "any document or electronically transmitted data or information, written or oral statement, or act that is material and false, or any omission that is material," and that results in any amount of applicable AD or CVD duties being reduced or not being applied with respect to the merchandise. 19 U.S.C. § 1517(a)(5)(A). There is no limitation in the definition of evasion that would exclude from EAPA material and false statements or material omissions made on entry paperwork that concern the classification of entered merchandise or the type of entry. *See id.*

In fact, this Court has already sustained a determination by Customs that an importer had evaded AD and CVD orders by misclassifying its merchandise upon importation. In *Ikadan Sys. USA, Inc. v. United States*, 47 CIT __, __, 639 F. Supp. 3d 1339, 1350 (2023), plaintiffs raised the precise argument raised by the instant plaintiff. Specifically, the *Ikadan* plaintiffs asserted that "they did not evade the *AD/CVD Steel Orders* because they had a 'good faith disagreement' with CBP about the scope of the *Orders*." *Id.* The Court rejected that argument and sustained Customs' finding of evasion based on "the . . . fact that Plaintiffs had misclassified their entries as not subject to AD/CVD duties." *Id.* at __, 639 F. Supp. 3d at 1347.

In the instant case, Customs concluded that plaintiff had made both statements and omissions that were false and material. First, Customs found that plaintiff "incorrectly entered the products at issue on type '01' consumption entries instead of on type '03' AD/CVD entries." R&R Review at 16. Customs explained that "the entries should have been declared as subject to AD/CVD deposits/duties, but they were not." *Id.* Second, Customs concluded that plaintiff "omitted Case Nos. A-570-084 and C-570-

**PUBLIC VERSION**

085 from the entry summary documentation," which was a material omission "because it

interfered with the government's ability to accurately track imports of QSP from China,

to collect the applicable antidumping and countervailing duties due, and to determine

and assess future antidumping and countervailing duties."[5]  *Id.*

Accordingly, the court concludes that plaintiff's alleged "false statements or

omissions" concerning the classification of merchandise upon entry can support a

finding of evasion under § 1517.

---

[5] During oral argument, plaintiff cited for support this Court's decision in *Diamond Tools Technology LLC v. United States*, 46 CIT __, __, 609 F. Supp. 3d 1378, 1386 (2022), in which the Court held that "Customs failed to demonstrate that [plaintiff's] classification of its entries constitutes a material and false statement or material omission under 19 U.S.C. § 1517(a)(5)(A)."  Oral Arg. Tr. at 9:25-10:5, ECF No. 41.  *Diamond Tools* is inapposite.  The *Diamond Tools* plaintiff imported its merchandise as type 01 entries not subject to AD/CVD orders based on express statements by Commerce that the specific type of merchandise that plaintiff had imported was outside the scope of the orders. *Diamond Tools*, 46 CIT at __, 609 F. Supp. 3d at 1386-89.  The Court observed that "Commerce not only was crystal clear but in fact doubled down on its clear conclusion and formulation."  *Id.* at __, 609 F. Supp. 3d at 1388.  For that reason, the Court concluded that "filling out the forms in a way that tracked explicitly" Commerce's instructions "does not constitute a material and false statement or omission."  *Id.* Contrary to the record before the Court in *Diamond Tools*, the instant record does not indicate that plaintiff relied on any guidance from Commerce excluding plaintiff's merchandise from the scope of the *Orders*.  And the scope of the *Orders* on QSP from China is clear in that it "only includes products where the silica content is greater than any other single material, by actual weight."  *Certain Quartz Surface Products from the People's Republic of China: Antidumping and Countervailing Duty Orders*, 84 Fed. Reg. 33,053, 33,055 (Dep't of Commerce July 11, 2019).

PUBLIC VERSION

**B.    Customs' refusal to make a covered merchandise referral or to stay the EAPA investigation pending Commerce's scope ruling**

     **1.    Legal framework**

19 U.S.C. § 1517(b)(4) allows Customs to make a covered merchandise referral request to Commerce and states:

> If the Commissioner receives an allegation [of evasion] and is unable to determine whether the merchandise at issue is covered merchandise, the Commissioner shall—
>
> > (i) refer the matter to the administering authority to determine whether the merchandise is covered merchandise pursuant to the authority of the administering authority under subtitle IV; and
> >
> > (ii) notify the party that filed the allegation, and any other interested party in the investigation, of the referral.

19 C.F.R. § 165.16(a) states that "[a] referral is required if at any point after receipt of an allegation, CBP cannot determine whether the merchandise described in an allegation is properly within the scope of an antidumping or countervailing duty order."

The statute provides for the stay of Customs' deadlines in completing the investigation of evasion only during "[t]he period required for any referral and determination" by Commerce.  19 U.S.C. § 1517(b)(4)(C).

     **2.    Analysis**

The court addresses whether Customs' decisions not to (1) make a covered merchandise referral to Commerce or (2) stay the EAPA investigation pending the results of Commerce's scope inquiry are in accordance with the statute and Customs' regulations.

PUBLIC VERSION

a.   **Customs' decision not to make a covered merchandise referral**

The court considers first Customs' decision not to make a covered merchandise referral to Commerce.

During the investigation, plaintiff "expressly requested that CBP seek . . . advice from [Commerce] on more than one occasion."  Pl. Br. at 10 (citing Entry 7687 CF-28 Response at 2; Pl. VFI at 3; Resubmission with Redactions Written Arguments at 2-6). In its arguments before Customs, submitted on April 17, 2023, plaintiff asserted that there was no dispute that its products "are of China Origin and were not transshipped through another country."  Resubmission with Redactions Written Arguments at 3. Plaintiff argued therefore that "the *only issue* before CBP in this EAPA matter is whether or not such goods are within the scope of the order."  *Id.*  Because the "issue as to scope is not delegated to CBP," plaintiff asserted that Customs "must defer to [Commerce]."  *Id.* at 5.  Customs concluded in the June 14 Final Determination of evasion, and again in the October 23 R&R Review, that:  (1) neither the EAPA statute nor Customs' regulations required Customs to refer the scope issue to Commerce; (2) plaintiff's merchandise fell within the scope of the order; and (3) there was substantial record evidence that plaintiff entered the merchandise through evasion.  Final Determination at APPX005582-APPX005586; R&R Review at 12-18.

Plaintiff argues before the court that "[t]he statute expressly requires CBP to seek advice from Commerce with respect to whether goods fall within the scope of the order." Pl. Br. at 9.  Plaintiff asserts that the language of the statute is "clear and unequivocal" that Customs "is required to" seek advice from Commerce "where, as here, there is a legitimate dispute as to scope."  *Id.* at 9-10.  On this point, plaintiff notes that the statute

"uses the directive 'shall' rather than 'may'" in directing Customs to refer the matter to Commerce if Customs "is unable to determine whether the merchandise at issue is covered merchandise." *Id.* Plaintiff adds that it "expressly requested that CBP seek . . . advice from [Commerce] on more than one occasion," and in one such request "emphasized the non-traditional nature of the slab and the lab tests of record which showed that the product was not chief weight silica." *Id.* at 10-11. Plaintiff faults Customs for ignoring these requests. *Id.* at 11.

Plaintiff continues that Customs' regulations are "clear that CBP cannot make a decision to scope [sic] on its own initiative where there is a legitimate dispute as to scope." *Id.* at 12. Plaintiff asserts that "CBP should have sought advice from Commerce as to whether the goods were subject to the scope of the order, and whether or not it did so, CBP was obligated to take notice of the scope ruling process at Commerce." *Id.* at 13.

Customs' decision not to make a covered merchandise referral to Commerce is in accordance with law.

Section 1517(b)(4)(A) states:

If the Commissioner receives an allegation [of evasion] and is unable to determine whether the merchandise at issue is covered merchandise, the Commissioner shall—

> (i) refer the matter to the administering authority to determine whether the merchandise is covered merchandise pursuant to the authority of the administering authority under subtitle IV[.]

Customs exercised its authority properly in determining on its own that plaintiff's merchandise was within the scope of the *Orders*. The statute does not place on Customs an obligation to refer the matter to Commerce wherever an interested party

**PUBLIC VERSION**

Court No. 23-00253                                                                                    Page 20

posits that merchandise subject to an EAPA investigation falls outside the scope of an

existing AD or CVD order.  To the contrary, the statute and Customs' regulations require

that Customs refer a scope issue to Commerce only where Customs "is unable to

determine whether the merchandise at issue is covered merchandise."  19 U.S.C. §

1517(b)(4)(A); 19 C.F.R. § 165.16(a) ("A referral is required if at any point after receipt of

an allegation, CBP cannot determine whether the merchandise described in an

allegation is properly within the scope of an antidumping or countervailing duty order.").[6]

The statute expressly grants Customs the authority to decide when Customs "is unable

to determine whether the merchandise at issue is covered merchandise" and therefore

whether it is appropriate to make a covered merchandise referral to Commerce.  19

U.S.C. § 1517(b)(4)(A).

---

[6] The court notes that in the *Final Rule*, Customs considered a commenter's argument
that Customs "should provide for a mechanism for an interested party to seek relief
when CBP improperly refuses to refer a scope issue to Commerce and for situations
where CBP improperly suspends liquidation of entries when the scope issue is being
disputed."  *Investigation of Claims of Evasion of Antidumping and Countervailing Duties*
("*Final Rule*"), 89 Fed. Reg. 19,239, 19,246-47 (CBP Mar. 18, 2024).  Customs
"disagree[d] with the commenter's argument":

> CBP works with the appropriate internal subject matter experts during an
> EAPA investigation and, in addition, works with the Customs Liaison Unit at
> Commerce, and refers cases to Commerce regarding the scope of an
> AD/CVD order when appropriate.  The covered merchandise referral to
> Commerce pursuant to 19 U.S.C. [§] 1517(b)(4) is a specific authority for
> CBP to use in EAPA investigations, as needed, and should remain within
> CBP's discretion.  Apart from CBP's authority to refer issues to Commerce
> for a covered merchandise determination, an interested party also has the
> ability to seek resolution of a scope issue before Commerce pursuant to
> Commerce's regulations found at 19 CFR [§] 351.225 and 19 CFR [§]
> 351.227.  CBP does not believe than an additional mechanism is needed in
> this rulemaking.

*Id.*

**PUBLIC VERSION**

The *Ikadan* Court reached the same result.  In *Ikadan*, plaintiffs "challenged

CBP's authority to make [the covered merchandise determination]" and argued that

"'only Commerce can interpret and clarify the scope of an antidumping duty order.'"

*Ikadan*, 47 CIT at __, 639 F. Supp. 3d at 1352.  The Court rejected plaintiffs' position

and stated:

> By reaching its conclusion that Plaintiffs' merchandise is covered by the
> *AD/CVD Steel Orders*, CBP was not making a "scope determination" in
> Commerce's stead; it was acting pursuant to EAPA's directive to initiate an
> investigation based on CBP's determination "that the information provided
> in the allegation . . . reasonably suggests that covered merchandise has
> entered into the customs territory of the United States through evasion."  19
> U.S.C. § 1517(b)(1).  Specifically, Customs shall either reach a covered
> merchandise determination itself, as it did here, or refer the matter to . . .
> Commerce it if is *unable* to reach the determination independently.  *Id.* §
> 1517(b)(4).

*Id.* (first alteration in original); *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1317

(Fed. Cir. 2020) (en banc) (stating that "Customs has a statutory responsibility to fix the

amount of duty owed on imported goods," and in fulfilling that responsibility, "Customs is

both empowered and obligated to determine in the first instance whether goods are

subject to existing antidumping or countervailing duty orders").

Here, Customs concluded that it was capable of reaching a determination as to

whether plaintiff's merchandise was "covered merchandise" under § 1517(a)(3).

Accordingly, Customs was obligated to reach a "yes-or-no answer," *Sunpreme*, 946 F.3d

at 1317, based on the facts of the investigation, as to whether the subject merchandise

was *covered* merchandise — namely, merchandise as to which "the silica content is

greater than any other single material, by actual weight."  *Orders*, 84 Fed. Reg. at

PUBLIC VERSION

33,055.  Consequently, Customs' decision not to make a covered merchandise referral

to Commerce is in accordance with law.

### b.    Customs' refusal to stay the EAPA investigation

The court considers next whether the statute or Customs' regulations required

Customs to stay the EAPA investigation pending the result of Commerce's scope

inquiry.

On May 12, 2023, plaintiff filed a scope ruling request with Commerce, and on

June 13, 2023, Commerce initiated a formal scope inquiry under 19 C.F.R. §

351.225(d)(1).  Commerce Scope Ruling at 1.  On July 6, 2023, after TRLED's June 14

Final Determination of evasion, plaintiff submitted to Customs as "supplemental

authority" the Federal Register notice of plaintiff's scope ruling application to

Commerce.  R&R Review at 17.  However, Customs rejected the July 6 submission as

untimely and did not include it as part of the administrative record.  *Id.*

Plaintiff argues that Customs was required to stay the EAPA investigation

pending the result of Commerce's scope ruling.  Plaintiff relies on Customs' response

noted above to certain comments in the *Final Rule* implementing EAPA.  Pl. Br. at 11-12

(quoting *Final Rule*, 89 Fed. Reg. at 19,246-47).  According to plaintiff, Customs' refusal

to take into account plaintiff's filing of a request for a scope ruling was "directly contrary

to CBP's stated regulatory position."  *Id.* at 12.

Customs' refusal to stay the EAPA investigation pending the results of

Commerce's scope inquiry is in accordance with law.

The statute is clear.  Section 1517(b)(4)(C) provides for the "[s]tay of deadlines"

and states that "[t]he period required *for any referral and determination under this*

**PUBLIC VERSION**

*paragraph* shall not be counted in calculating any deadline under this section." 19

U.S.C. § 1517(b)(4)(C) (emphasis supplied). However, as described above, Customs

did not make a covered merchandise referral to Commerce and instead determined

independently "that the merchandise Vanguard imported was subject to the AD/CVD

Orders, and thus, covered merchandise under EAPA." R&R Review at 12.

"The purpose of the EAPA was to empower the U.S. Government and its

agencies with the tools to identify proactively and thwart evasion at earlier stages to

improve enforcement of U.S. trade laws, including by ensuring full collection of AD and

CVD duties and, thereby, preventing a loss in revenue." *Diamond Tools Tech. LLC v.*

*United States*, 45 CIT __, __, 545 F. Supp. 3d 1324, 1351 (2021). Plaintiff's position

would permit an importer to achieve — essentially unilaterally — a pause in an EAPA

investigation by filing a separate request with Commerce for a scope inquiry. Such a

result is not provided for in the statute and is plainly contrary to its legislative history to

provide for "the tools to identify proactively and thwart evasion at earlier stages to improve enforcement of U.S. trade laws."[7]  *Id.*

Plaintiff maintains that Customs' refusal to stay the EAPA investigation was "contrary to the regulatory statements of CBP" in implementing Customs' EAPA regulations.  Pl. Br. at 11.  Plaintiff relies on the following statement of Customs in response to a comment:

> One commenter argued that CBP should provide for a mechanism for an interested party to seek relief when CBP improperly refuses to refer a scope issue to Commerce and for situations where CBP improperly suspends liquidation of entries when the scope issue is being disputed.
>
> CBP disagrees with the commenter's argument.  CBP works with the appropriate internal subject matter experts during an EAPA investigation . . . .  Apart from CBP's authority to refer issues to Commerce for a covered merchandise determination, an interested party also has the ability to seek resolution of a scope issue before Commerce pursuant to Commerce's regulations found at 19 CFR [§] 351.225 and 19 CFR [§] 351.227.

*Final Rule*, 89 Fed. Reg. at 19,246-47.

---

[7] In 2015, the Committee on Ways and Means in the U.S. House of Representatives released a report on the Trade Facilitation and Trade Enforcement Act of 2015.  H.R. Rep. No. 114-114, pt. 1 (2015).  This report demonstrates that Congress intended for EAPA — referred to as the ENFORCE Act in the House bill — to provide a specific timeline for evasion investigations.  *Id.*  Sander M. Levin, Ranking Member of the Committee, included the following statement in the Additional Views section:

> There appears to be growing consensus that ENFORCE is the appropriate way to address allegations of evasion.  Prior efforts to require Customs to enforce these allegations by using existing statutory provisions (e.g., Section 516 of the Tariff Act of 1930) have failed by not requiring Customs to act on a petition within a fixed period of time.  The longer Customs takes, the more entities are liquidated—that is, they become final, and any additional duties owing are foregone.

*Id.* at 381; *see also* S. Rep. No. 114-45 at 12 (2015).

**PUBLIC VERSION**

Plaintiff's reliance on this statement is misguided.  The statement reflects a recognition that EAPA does not nor was it ever intended to limit the ability of an interested party to file separately with Commerce a request for a scope inquiry — a statutorily prescribed procedure that plaintiff utilized.  As described above, Commerce initiated a scope inquiry in response to plaintiff's request and ultimately concluded, as Customs did in the EAPA investigation, that plaintiff's merchandise was within the scope of the *Orders*.  *See* Commerce Scope Ruling.  However, plaintiff elected not to seek judicial review of Commerce's scope ruling.  *See* 19 U.S.C. § 1516a(a)(2)(A)(ii) (allowing an interested party who was a party to the proceeding to commence an action in this Court to challenge a determination under 19 U.S.C. § 1516a(a)(2)(B)(vi)); *id.* § 1516a(a)(2)(B)(vi) (referencing a Commerce determination "as to whether a particular type of merchandise is within the class or kind of merchandise described in an existing finding of dumping or antidumping or countervailing duty order").

In sum, Customs' decisions not to make a covered merchandise referral to Commerce and to refuse to stay the EAPA investigation pending the results of Commerce's scope inquiry are in accordance with law.[8]

---

[8] Plaintiff asserts that "[h]ad CBP followed its legal obligations and requested advice from Commerce in a timely fashion, Commerce would have found that the products at issue are out of scope."  Pl. Br. at 18.  Plaintiff's speculation as to what Commerce "would have" done is puzzling because, as described above, Commerce did eventually issue a scope ruling — prior to the onset of briefing in the instant litigation — in which Commerce concluded that plaintiff's merchandise was within the scope of the *Orders*. *See* Commerce Scope Ruling at 1.

Court No. 23-00253                                                                    Page 26

## II.    Whether Customs' finding of evasion is arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law

### A.    Legal framework

19 U.S.C. § 1517(c)(1)(A) requires that Customs "make a determination, based on substantial evidence, with respect to whether . . . covered merchandise was entered into the customs territory of the United States through evasion" within 300 days of the initiation of the investigation with respect to such merchandise.  Section 1517(f)(1) allows "a person determined to have entered such covered merchandise through evasion" to "file an appeal with the Commissioner for de novo review of the determination."

A determination of evasion requires three elements: (1) entering covered merchandise into the United States; (2) by means of any document or data or information, written or oral statement, or act that is material and false, or any omission that is material; and (3) that results in any applicable cash deposit or other security being reduced or not applied to the merchandise.  *Diamond Tools*, 45 CIT at __, 545 F. Supp. 3d at 1347 (citing 19 U.S.C. § 1517(a)(5)(A)).

"The term 'covered merchandise' means merchandise that is subject to—(A) an antidumping duty order issued under section 1673e . . . ; or (B) a countervailing duty order issued under section 1671e . . . ."  19 U.S.C. § 1517(a)(3).

Section 1517(g)(2)(B) provides for judicial review of Customs' determinations under subsection (c) and (f) and requires that this Court consider "whether any determination, finding, or conclusion is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

PUBLIC VERSION

### B.   Analysis

The issue before the court is whether Customs' finding that plaintiff's "artificial marble and/or artificial stone" is covered merchandise is arbitrary, capricious or an abuse of discretion.  *Id.* § 1517(g)(2)(B); *Ikadan*, 47 CIT at __, 639 F. Supp. 3d at 1350-53 (reviewing Customs' covered merchandise determination for whether it was arbitrary or capricious).

The court considers below (1) Customs' decision to disregard plaintiff's lab report and (2) Customs' conclusion that plaintiff's "artificial marble and/or artificial stone" is covered merchandise.

### 1.   Customs' decision to disregard plaintiff's lab test

The court addresses first Customs' decision to disregard plaintiff's lab report. Plaintiff argues that its lab report was "conclusive and showed that the material of chief weight was not Silica ($SiO_2$)."  Pl. Reply Br. at 6.  Plaintiff's lab report was completed by the [[                                                                                    ]] and showed that the tested product was 33.9% silica and when adjusted for Loss on Ignition[9] was 29.7% silica.  Pl. VFI at 3; *Id.*, Ex. A (Testing Summary).  The report showed in addition that the tested product was 40.2% Ferri-winchite and when adjusted for Loss on Ignition was 35.3% Ferri-winchite.  *Id.* at 3; *Id.*, Ex. A (Testing Summary).  Plaintiff asserts that the percentage of Ferri-winchite combined with other materials in the tested product not containing silica "add up to over 57% of the weight of the materials."  Pl. Br. at 19.  So,

---

[9] "Loss on ignition" refers to the destruction of inorganic materials in the first step of testing.  Pl. Br. at 15.

according to plaintiff, its lab report is "direct evidence" that "the products at issue are out of scope."[10]  *Id.* at 18-20.

The court is satisfied that Customs' finding that plaintiff's lab report was unreliable is not arbitrary or capricious.

"The scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency."  *State Farm*, 463 U.S. at 43.  However, Customs must "nonetheless articulate a 'rational connection between the facts found and the choice made.'"  *Ikadan*, 47 CIT at __, 639 F. Supp. 3d at 1346 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)).

The court is satisfied that Customs articulated a "rational connection between the facts found and the choice made" not to rely on plaintiff's lab report.  Customs concluded that plaintiff's lab report was not reliable because "CBP [had] no way of knowing if the test report . . . is the same for the FriTech patented product subject to this EAPA investigation."  Final Determination at APPX005581; R&R Review at 15-16.  Customs reached this conclusion for multiple reasons.  First, Customs noted that plaintiff "did not provide responses to CBP's RFI questionnaires," so Customs "[had] no way of corroborating that the tested merchandise included in the report is the same as the merchandise imported by the Importer during the period of investigation under HTS

---

[10] Plaintiff argues also that Customs was required to "submit[] to Commerce" plaintiff's lab report and that "Commerce, based on a full and complete record, would necessarily have concluded, at a minimum, that there exists a category of products of slabs made of non-quartz minerals which would be outside the scope of the order on quartz."  Pl. Br. at 20.  But the court has concluded that the statute did not require that Customs make a covered merchandise referral to Commerce, and the court does not address this argument further.

Court No. 23-00253                                                                                           Page 29

6810.99.0080."  Final Determination at APPX005585; R&R Review at 15.  Second,

Customs stated that "the product referred to in the test report was described as FriTech

dark number 28270," which "was not listed in the FriTech product brochure provided to

CBP in the investigation," indicating that the product that was the subject of plaintiff's lab

report was different than the product that was the subject of the EAPA investigation.

Final Determination at APPX005581.  Third, Customs noted that "the content of the

tested material in the VFI submission does not match the patent descriptions of the

content of the goods, as provided in [plaintiff's] CF-28 responses."  *Id.* at APPX005585.

For example, the product that was the subject of plaintiff's lab report contained high

levels of Ferri-winchite, but "neither the FriTech product information nor the WTO patent

provided" in the record "mentioned Ferri-winchite as one of the components."[11]  *Id.* at

APPX005581.

––––––––––––––––––––––

[11] The court observes that the only identifying information in plaintiff's lab report is a
"Sample Name" and a "Sample Number," but there does not appear to be any
information connecting the sampled product to the merchandise subject to the EAPA
investigation.  Pl. VFI, Ex. A (Testing Summary).  As Customs concluded, "there is
nothing in the record that would support a conclusion that [plaintiff's] lab reports are
even relevant."  R&R Review at 15.

Accordingly, the court concludes that Customs' decision that plaintiff's lab report was unreliable is not arbitrary or capricious.[12]

### 2.   Whether plaintiff's merchandise is "covered merchandise"

The court addresses next Customs' conclusion that plaintiff's merchandise, imported as "artificial marble and/or artificial stone," is covered merchandise.

Plaintiff asserts that the evidence of evasion is not substantial.  Pl. Reply Br. at 6. Plaintiff argues that "there is no evidence, let alone substantial evidence, that the slab is in scope" because "[t]here are no CBP lab tests of record that support a finding that the goods are in scope," and "the patents in question only generally described the product, and in any event, the actual facts control, not the patent."  *Id.* at 7.

According to plaintiff, the patents on which Customs relied in concluding that plaintiff's product is "covered merchandise" were "theoretical discussion of the material" and "between the issuance of the patent, which does not have fixed material specifications, and the production of the goods, the formulation could have changed to ensure that the goods were outside of the scope of the order."  Pl. Br. at 16-17.

---

[12] Customs was unable to take its own sample of plaintiff's product because "no entries were imported into the United States after the investigation was initiated."  Final Determination at APPX005580 n.79.  Plaintiff objects to Customs' statement that it could not take samples of plaintiff's product after initiation.  Plaintiff takes issue specifically with two additional lab tests on the record that plaintiff asserts "[have] no relevance at all in this EAPA matter."  Pl. Br. at 14.  According to plaintiff, "these lab reports are so deficient on their face, that they are simply unusable."  *Id.* at 15.  Plaintiff continues:  "So it appears that either CBP *knowingly* placed on the record irrelevant lab tests bracketed in such a fashion as to hide the truth or the CBP had, in fact, samples of the importers [sic] products, and could have conducted more lab tests to determine the accuracy and applicability of the test placed on the record by Vanguard."  *Id.* at 17.  However, Customs did not rely on the two lab tests that Customs placed on the record in reaching Customs' determination of evasion.  R&R Review at 18.  Instead, Customs relied on the two patents for plaintiff's product — both public and fully accessible to plaintiff in the record.

Customs' conclusion that plaintiff's merchandise was "covered merchandise" under § 1517 is not arbitrary, capricious or an abuse of discretion.

Customs concluded that, "[b]ased on the evidence on the record . . . the FriTech product being imported as artificial marble and artificial stone is covered by the scope of the *AD/CVD Orders* because the patent information regarding the composition of the material shows that the imported FriTech product is composed predominately of silica." Final Determination at APPX005582; R&R Review at 12-13.  As a result, Customs determined that plaintiff's "imports of QSP fit within the plain language of the scope of the AD/CVD Orders, and thus, are covered merchandise under EAPA."  R&R Review at 16.

In reaching that determination, Customs began with the scope of the *Orders*, which "provides that subject merchandise must include 'predominately silica (*e.g.*, quartz, quartz powder, cristobalite) as well as a resin binder (*e.g.*, an unsaturated polyester)' to be covered by the AD/CVD Orders."  R&R Review at 12 (quoting *Orders*, 84 Fed. Reg. at 33,055-56).  Customs then noted that the "[s]ubject merchandise is not limited strictly to 'quartz'" because the scope of the *Orders* also provided that:

> Quartz surface products may also generally be referred to as engineered stone or quartz, artificial stone or quartz, agglomerated stone or quartz, synthetic stone or quartz, processed stone or quartz, manufactured stone or quartz, and Bretonstone®."

*Id.* at 12-13 (citing *Orders*, 84 Fed. Reg. at 33,056 n.15).

Customs then turned to the record and concluded that documentation in plaintiff's CF-28 responses for both Entry 7687 and Entry 9748, along with the Fri-Tech Patent referenced in plaintiff's CF-28 response and contained in Cambria's allegation,

constituted substantial record evidence that plaintiff's "artificial stone . . . fit within" the

language of the *Orders*.  R&R Review at 14-16.  Customs' analysis focused in particular

on the Fri-Tech Patent and the WIPO Patent, both of which described products

comprised predominately of silica by weight.

Customs observed that the artificial stone in the Fri-Tech Patent "is comprised of

the following raw materials, in parts, by mass":

| | |
|---|---|
| Fritted sand | 60-80 parts |
| Quartz powder | 10-30 parts |
| Terephthalic unsaturated polyester resin | 9-14 parts |
| Curing agent | .6-1 parts |
| Coupling agent | .8-1 parts |
| Pigment paste | .5-1 parts |
| Pigment powder | .1-1 parts |

*Id.* at 13 (citing Fri-Tech Patent at 1).[13]

Therefore, according to the Fri-Tech Patent, "the primary raw materials of the

artificial stone are fritted sand and quartz powder."  *Id.*; Fri-Tech Patent at 1.  Customs

then evaluated the chemical composition of the fritted sand, which was also contained

in the Fri-Tech Patent.  R&R Review at 13.  The Fri-Tech Patent revealed that "by mass

percent, fritted sand consists of 60 percent to 80 percent silica."  *Id.*; Fri-Tech Patent at

1.  On this basis, Customs identified that the Fri-Tech Patent "makes clear that silicon

dioxide ($SiO_2$), also known as silica, is the primary component of the top two

components of the artificial stone: fritted sand and quartz powder."  R&R Review at 14.

Then, to establish that plaintiff's artificial stone was predominately silica, Customs took

"the most conservati[ve] approach — a minimum quartz powder content of 10 parts with

---

[13] Both plaintiff and defendant note that quartz powder is "pure silica."  Def. Br. at 11; Pl.
Br. at 16 (treating quartz and silica as synonyms).

99 percent silica and fritted sand that has a minimum silica content of 60 percent —"
and concluded that "silica comprises more than half of the content of the artificial stone
discussed in the patent."  *Id.*

Customs then reviewed the WIPO Patent that plaintiff included in its CF-28
Response for Entry 9748 and concluded that the chemical composition of the artificial
stone described in the WIPO Patent also consisted predominately of silica.  *Id.* at 14-15
(citing WIPO Patent at 4).  For example, the WIPO Patent stated that "the invention is
concerned with synthetic silicate granules comprising: 52.50 – 59.80 wt.% of $SiO_2$,"
among other materials.  WIPO Patent at 4.  In addition, the WIPO Patent described a
"preferred embodiment" with an even higher percentage, by weight, of silica of 56.90-
59.80 percent.  *Id.* at 7.  So, like the Fri-Tech Patent that described the product imported
in Entry 7687, the WIPO Patent revealed that the product imported in Entry 9748 was
comprised predominately of silica.

Plaintiff maintains that the merchandise "could have changed" from what is
described in the patents "to ensure that the goods were outside of the scope of the
order."  Pl. Br. at 16-17.  This argument is speculative and unsupported by the record.
And, as the court has concluded, Customs reasonably dismissed as unreliable the lab
test that plaintiff offered after refusing to respond fully to Customs' requests for
information.  As a consequence, there is no indication in the record that the patents —
one referenced directly by plaintiff in its first CF-28 response and the other provided by
plaintiff in its second CF-28 response — did not describe accurately the composition of
plaintiff's merchandise.

Court No. 23-00253                                                                                      Page 34

Accordingly, given the scope of the *Orders*, as well as the facts in the record on which Customs relied, "Customs has established the necessary 'rational connection between the facts found and the choice made' to support its conclusion on the merits" that plaintiff's merchandise was covered merchandise.  *Ikadan*, 47 CIT at __, 639 F. Supp. 3d at 1351 (quoting *Burlington Truck Lines*, 371 U.S. at 168).

Finally, Customs concluded reasonably that substantial evidence supported that plaintiff entered covered merchandise "by means of material and false documents or electronically transmitted data or information, written statements, or material omissions that resulted in AD/CVD cash deposits not being applied with respect to the merchandise."  R&R Review at 16; *see* 19 U.S.C. § 1517(a)(5)(A).  Plaintiff entered the merchandise at issue falsely as "type 01" consumption entries not subject to the *Orders* on QSP from China instead of as "type 03" AD/CVD entries.  Moreover, plaintiff omitted from the entry summary documentation the existing AD/CVD *Orders* — Case Nos. A-570-084 and C-570-085.  The court has concluded that such false statements or omissions concerning the classification of entered merchandise may support a finding of evasion under § 1517.  *See supra* Section I.A.2; *Ikadan*, 47 CIT at __, 639 F. Supp. 3d at 1350.  In this case, Customs concluded reasonably that plaintiff's product was "covered merchandise" at the time plaintiff imported such merchandise and that plaintiff's declaration of the merchandise as "artificial marble and/or artificial stone" rather than as QSP subject to the *Orders* was material and false.

In sum, Customs' conclusion that plaintiff entered covered merchandise into the customs territory of the United States through evasion is not arbitrary, capricious or an abuse of discretion.

**PUBLIC VERSION**

Court No. 23-00253                                                                                    Page 35

**CONCLUSION**

For the reasons described above, plaintiff's motion for judgment on the agency record is denied, and Customs' determination of evasion is sustained.  Judgment will enter accordingly.

/s/      Timothy M. Reif
Timothy M. Reif, Judge

Dated:      May 19, 2025
        New York, New York